## SAMUEL B. SKLAR v. EUGENE BERNSTEIN.

Western Section.   May 11, 1928.

Petition for Certiorari denied by Supreme Court, June 30, 1928.

594

Sivley, Evans & McCadden, of Memphis, for appellant.
W. H. Harrelson, of Memphis, for appellee.

OWEN, J. The plaintiff below instituted a damage suit against the defendant for slander. Ancillary to this suit the plaintiff sued out an attachment, which attachment was levied by garnishment on 2000 muskrat skins or furs, which were then in possession of the American Railway Express Company. The defendant had delivered the furs to the express company shortly before they were seized by the sheriff, to be shipped to New York City. The Fidelity & Deposit Company of Maryland, which is now complaining of the judgment below, became surety on the cost bond and the attachment bond of the plaintiff. The attachment bond was executed April 22, 1924, and is in the following words and figures:

"Attachment Bond.

"We, Samuel B. Sklar, principal, and the Fidelity and Deposit Company of Maryland, as surety, acknowledge ourselves indebted to Eugene Bernstein, defendant, in the sum of five thousand ($5,000) dollars, to be void if the said complainant prosecutes this suit successfully and judgment given in his favor who has this day filed a bill in the circuit court of Shelby county praying an attachment therein against the estate of the said defendant Eugene Bernstein for the sum of five thousand ($5,000) dollars, and obtains the same upon the execution of this bond, shall prosecute the said

attachment with effect or in case of failure to pay the defendant all costs which may be adjudged against complainant and also all such damages as defendant may sustain by the wrongful suing out of this attachment.

"Witness our hands and seals this 22nd day of April, 1924.

"Samuel B. Sklar (Seal),

"Fidelity & Deposit Company of Maryland

"By J. H. Russell, atty. in fact. (Seal)."

On April 24th following the execution of said bond the express company filed an answer to the garnishment served upon it, and among other things it stated that on April 17, 1924, defendant Eugene J. Bernstein delivered to the respondent three packages said to contain raw furs and valued to said Bernstein at $2500. Said packages were delivered to the express company at Memphis, Tennessee, and consigned to one Morris Saulzer, 123 West 26th Street, New York City, and respondent stated that on April 18, 1924, and before said goods had left Memphis, a garnishment was served upon respondent, notifying respondent that all property, money and goods, etc., of said Eugene J. Bernstein which were then in the custody or possession of it, had been attached, and directed respondent to retain possession of same. The answer stated that said furs are deteriorating in value by reason of being kept in said original packages and that said furs will continue to deteriorate as long as so packed. The express company stated it had no interest in the controversy between the plaintiff and defendant, but that by reason of the fact that said goods they claimed would be deteriorating, respondent deems it its duty to "immediately report the facts to this Honorable Court and to ask the instructions of the Honorable Court as to the disposition of said three packages."

Respondent suggested that the three packages be turned over to the clerk of the court as receiver to make such disposition of same as will best conserve the interest of all parties concerned. Respondent prayed that it be permitted to deliver said furs to the clerk of the court as receiver, or someone else as receiver, and that respondent be discharged as garnishee and released from all responsibility of said furs. This answer was properly verified by J. H. Hays, general agent of the express company.

On April 25th the cause was heard upon the answer of the express company to the garnishment notice and upon the entire record, when the court appointed one J. E. Schiebler of Memphis, Tennessee, receiver. Upon the said Schiebler executing bond in the sum of $4000, with good and sufficient sureties, or an approved surety company, he was directed to enter upon the discharge of the duties as such receiver, and at once proceed at public or private sale, as he may deem best, to convert said skins into money and retain the proceeds of said

sale in his hands as receiver subject to the further orders of this court. He was directed to report to the court when the furs were disposed of and the proceeds were in his hands.

Upon the delivery of said furs to the receiver appointed, the express company was discharged. The defendant was instructed to surrender the express company's receipt issued for said furs. This order was made without prejudice to the claims of the plaintiff or of the defendant.

On the same day Schiebler executed a receiver's bond in the sum of $4000 with the Fidelity & Deposit Company of Maryland as surety thereon,—the same surety which is now complaining in this court and who was surety on the attachment bond and the cost bond of the plaintiff.

Motion was entered to quash the attachment; motion was entered by plaintiff to be permitted to amend his affidavit. Amendment was allowed and the motion to quash was overruled. Thereupon the defendant filed a plea in abatement to the attachment. On May 20, 1924 defendant's plea was sustained and a judgment was entered quashing the ancillary attachment, and the receiver was directed to turn over to the defendant the goods and chattels now in his possession as such receiver and to report to the court the cost and expenses incurred by him as such receiver. The judgment further provided, the cost incident to the suing out and levying of the attachment would be assessed against the plaintiff and the surety on the cost bond, for which execution would issue. On motion and at the request of plaintiff the execution of this order and a redelivery of the goods attached to the defendant, is suspended for six days. All other questions are reserved.

Plaintiff filed a motion for new trial on May 23d. This was overruled and disallowed. On May 29, 1924, the plaintiff was allowed five days additional time within which to apply for writs of certiorari and supersedeas in the Court of Civil Appeals. We infer that no certiorari or supersedeas writ was granted as the case remained on the docket, and on December 18, 1925, it is shown that the case was continued; on April 24, 1926 there was an entry showing that the receiver had made application to the court for his fee. On April 30, 1925, the receiver filed a petition in which he stated that after being appointed receiver he took charge of 4000 muskrat furs, had them properly assorted and graded and properly labeled; that he solicited bids from various fur dealers through the country and before he was able to secure a sale or any bid for the same he was ordered and directed to turn over to the defendant said 4000 furs which he did, on the 5th day of June, 1924; that to assort said 4000 furs required a great deal of time and labor; that the receiver had the furs almost two months; that he had them insured and properly stored, and the receiver stated that he thought he should have a fee

of $250 for his services, which would be reasonable and proper; that the only funds that came into his hands were the furs.

Attached to this petition was a statement by the receiver, stating that the furs were worth $2000; that he incurred an expense for labor, assorting and airing from time to time the 4000 furs and keeping them in proper condition, of $160; that the storage on the furs was $60, the insurance $6, and he spent $26.37 for telegrams, postage and long distance telephone calls, trying to sell the furs.

On April 30, 1926, the receiver filed an amended petition in which he stated that he took possession of the raw furs immediately after being appointed receiver; that he found the furs were green and required constant attention; that being green furs, in order to prevent bugs and worms from getting into them, it was necessary that they be gone through many, many times while in his possession, aired and stirred; that the weather was warm and it was necessary that they be aired frequently; all of which required much time and attention of skilled labor, otherwise the furs would have deteriorated and become worthless in a few hours. It was for this reason that the receiver was compelled to run up an expense account of $160 in handling the furs.

This petition for compensation and expenses filed by the receiver was answered by the Fidelity & Deposit Company, the surety on the attachment bond and other bond. It denied that he had performed the services set forth in said petition; denied that the services were worth $250, but for whatever services he had performed the company demanded strict proof. It further denied that, if the receiver was entitled to a fee, the Fidelity & Deposit Company, hereinafter called the surety on the attachment bond, was liable, because the receiver's fee is not cost of the court and not such cost as come within the condition of said cost bond. It stated that it was not liable for the receiver's fee by reason of having signed the bond for the receiver; that it obligated itself to see that the receiver would faithfully discharge his duties as such and properly account for all properties coming into his hands as receiver.

"That it executed the attachment bond in this cause, but the condition of such attachment bond is such that the surety thereon would not become liable for the receiver's fee. The condition of said bond, in substance, was that it would pay to Bernstein any damages he sustained by virtue of the wrongful suing out of said attachment, but the condition of said bond did not include the payment of receivers but said bond enured wholly to the benefit of the defendant, Eugene Bernstein."

It further alleged that all cost under said bonds that have heretofore been adjudged by the court and the liability of the defendant under said bond has been determined and fixed by orders of this court and the same is now res adjudicata.

It appears that the Circuit Judge, Hon. M. R. Patterson, appointed the clerk of the circuit court as a Special Master to "take proof and report what, if any, expense did Scheibler as receiver incur in the handling, storage and efforts to sell furs for which he was appointed receiver; what would be a fair and reasonable compensation to said J. E. Scheibler for his services as receiver. All other matters reserved until the filing of the Master's report on this reference."

The clerk, pursuant to this order, took the deposition of the receiver in the presence of counsel for the receiver and counsel for the surety company. At the beginning of the taking of the receiver's deposition Mr. Thomas A. Evans, who was present for the surety company and the plaintiff, stated:

"Mr. Evans: On behalf of the plaintiff and the Fidelity & Deposit Company, the surety on the cost bond and the attachment bond, I protest against taking this proof, or taking any proof before the clerk, because the court of law has no power to refer this matter to the clerk, and because the entire proceeding is void in that the receiver has not proceeded in the way provided by law for the collection of his fees and costs, if any, to which he is entitled, it being our contention that an order of reference is not the proper proceeding to fix liability for the receiver's fee, nor has the receiver proceeded in a way authorized by law to fix liability and recover his fee."

The receiver testified that he paid $6 for insurance; that he paid sums for long distance telephone calls and telegrams, postage, etc., amounting to $26.37; that $60 was a reasonable charge for the storage; that the goods were stored in the receiver's storehouse; that $160 was reasonable for the amount paid for labor in assorting and airing the 4000 furs and keeping same in proper condition, and that if they had not been attended to every day, bugs would have gotten into them and destroyed them. He testified that the furs were worth $2000.

The clerk reported that $282.37 would be a proper amount to allow the receiver for his expenses and services. He further reported that the costs in the case amounted to $42.75 and was still due and unpaid. He reported that, in the case of Eugene Bernstein v. Samuel B. Sklar, No. 52176 T. D., a judgment was rendered on the 9th day of February, 1927 in favor of the plaintiff, which judgment has been satisfied on the records of this court, but the cost in the above case amounting to $15.90 is still due and unpaid. The only information we have as to Bernstein becoming plaintiff and Sklar defendant, reversing their positions is that a judgment was entered on the 9th day of February, 1927, the amount of which the record does not show, but there was a judgment rendered sometime after the judg-

ment was rendered in favor of Bernstein, defendant, wherein plaintiff Sklar's attachment suit was dismissed on May 20, 1924.

Following the report of this Special Master, which was unexcepted to, the trial judge gave a judgment in favor of the receiver against the plaintiff and his surety on attachment bond in the sum of $282.-37, to which judgment the plaintiff and the Fidelity & Deposition Company of Maryland excepted, and the deposit company prayed and was granted an appeal to this court. This judgment was entered November 21, 1927. On the same day the plaintiff and the deposit company filed a motion for a new trial, which motion was overruled on the same day it was filed. The deposit company perfected its appeal and has assigned five errors. By the first error it is insisted there is no liability against the surety on the cost bond and attachment bond; that no judgment could be entered against the surety except by an independent suit brought for that purpose on said bond; that the surety company is not liable by a motion or petition as has been attempted in this cause.

The second assignment insists that the liability of the surety company on the attachment bond is for damages sustained by Bernstein on account of the wrongful suing out of the attachment so that the surety on said bond is in no event liable for compensation to the receiver.

The third assignment is, that the receiver had sufficient property in his hands out of which he should have recovered his compensation; that when he permitted the assets in his hands to be shipped out without claiming his fee from such assets, he waived his claim for compensation.

By the fourth assignment it is insisted that, even if the receiver can fix the liability against the surety on said two bonds by motion, instead of by an independent suit, nevertheless such liability and the amount thereof should have been fixed by the court, and the court did not have the right to refer said matter to the clerk on a reference to take proof and hear the cause both as to liability and as to the amount of damages, but such hearing should have been had by the court; that the reference was not authorized by law.

By the fifth assignment it is insisted that there was no proof introduced before the court to show the reasonableness of the receiver's claim for compensation, and without such proof the court is unable to determine the amount of the compensation due the receiver.

By section 5594 of Shannon's Code, it is provided:

"The courts of this State are all vested with the power to appoint receivers for the safekeeping, collection, management and disposition of property in litigation in such court, whenever necessary to the ends of substantial justice, in like manner as receivers are appointed by courts of chancery."

Section 6391 of Shannon's Code provides:

"The court may make allowances to the clerk or other person acting as trustee, receiver or commissioner under the appointment of the court when no fees are fixed by law."

The record shows that the property of the defendant Bernstein was wrongfully attached; it was located in the hands of the American Railway Express Company. This company properly informed the court that the goods attached by a garnishment proceeding and in the hands of the company was of a perishable nature and of such a nature that if not unpacked and properly looked after, that it would deteriorate and be greatly damaged. The express company asked that the property be turned over to the clerk of the court. We presume that the clerk was too busy to attend to looking after these "green" furs or skins, and the court appointed in the clerk's stead Mr. Scheibler, who, it appears, was an experienced fur dealer, and Scheibler immediately took possession and gave the furs the proper care and protection required. By so doing he minimized the damage that would have been done to the defendant's property.

The courts of most jurisdictions are vested with large discretion in determining who shall pay the cost of receivers and according to the justice and equity of each case, may assess the costs of the receivership against the fund, against the applicant or apportion them among the parties. It may be stated as a general rule, however, that where there is no question as to the regularity or propriety of the appointment of a receiver, the receiver's compensation and expenses are payable from the funds in his hands, no part thereof being taxable against the parties at whose instance the receiver was appointed. Many cases hold that the receiver is entitled to receive compensation for his services and rembursement for his expenditures in the first instance from the funds which come into his possession, regardless of who is ultimately successful or ultimately liable to pay it. It has been held by some courts that when the funds in the hands of the receiver is insufficient to pay his expenses, he may look to those who procured his appointment for his compensation. R. C. L., Vol. 23, page 106.

"As a general rule, receivers are entitled to reasonable compensation for their services. A receiver's right to compensation is a strong equity, and analogous to an obligation founded upon an implied contract, and is not depended upon the mere arbitrary discretion of the court if his appointment was regular and his conduct has been free from exception. The compensation allowed a receiver must be reasonable, according to the circumstances of each case, and ordinarily should not be greater than would be his compensation for doing the same amount and character of work when employed by an individual. The considerations which should control in fixing the

compensation are the value of the property in controversy; the particular benefit to be derived from the receiver's efforts and attention, the labor and skill required and experience in the proper performance of the duties imposed.'' 23 R. C. L., p. 138.

Cases may arise in which the court will, if the fund in court be insufficient for that purpose, require the parties, at whose instance a receiver is appointed, to meet the expense of the receivership; but it has been held that special circumstances must appear, which upon equitable principles will authorize the court to fix liability upon plaintiff for such expenses, and the mere inadequacy of the property or fund to meet such expense constitutes in itself no reason why liability should be fixed upon plaintiff who has been guilty of no irregularity, and who has succeeded in a suit for obtaining the relief asked. C. J., Vol. 34, p. 367.

''Receivership expenditures in the absence of statute, should in all cases as between the parties be adjudged upon equitable principles. It has been held improper, however, to enter a judgment in the receiver's favor for his compensation and expenses. He is not a party to the suit and has no personal interest in the litigation although the irregularity in entering such judgment will not justify a reversal where the expenses, if taxed as cost, would equal the amount of the judgment, but the authorities are not entirely agreed as to how far or under what circumstances such expenses are charged against the parties or may be retained out of the funds. Thus they are sometimes taxed as cost to be allowed out of the fund, or are taxed against the unsuccessful party whose conduct created the necessity for a receiver, and it has been stated broadly in disapproving the practice of rendering a judgment in favor of the receiver that the proper method to be pursued is to tax such charges as cost in the ordinary mode.'' C. J., Vol. 38, page 366.

The author of Corpus Juris, in support of the principle we have just quoted, cites the case of McReynolds v. Brown, 121 Ill. App., p. 261.

In the case of Bellamy v. Washita Valley Tel. Co., 35 L. R. A. (N. S.), p. 412 — Okla. —, 105 Pac., 340, it was held, where on final hearing it is decreed by the court that the plaintiff would take nothing by his suit that, in effect, the appointment of a receiver was wrongful; that he be discharged and the property in controversy restored to the defendants, the court did not err in the exercise of its discretion in taxing plaintiff with the cost of the receivership.

The author cites various cases in support of the principle announced in the Oklahoma case in which it is said:

''In most jurisdictions it is held that where the appointment of a receiver is wrongfully made, causing the property of innocent persons to be wrongfully sequestered, that equity and jurisdiction re-

quire that the party at whose instance the wrong was done bear the burden.''

High on Receivers, Sec. 796, says:

"Thus where a receiver has been appointed at the instance of an attaching creditor to take possession of property which is subject to the lien of a prior mortgage, which is finally held to be superior to the lien of the attachment, the compensation of the receiver should not come out of the proceeds of the sale of the property but he must look to the plaintiff for his payment. So where the appointment of a receiver is upon an application which is adverse to the defendant and it subsequently turns out that such appointment was unwarranted and without authority of law, the receiver will be required to turn back to the defendant all funds in his possession unimpaired by deductions for the receiver's compensation and that of his counsel, the receiver being required in such cases to look to the plaintiff upon whose application he was appointed.

. . . . . . . .

"If there are no assets in his hands applicable to the payment of his compensation, it is proper to discharge him without making his appointment a condition precedent to his discharge, leaving the matter for subsequent determination in the cause.''

Clark on Receivers, Sec. 849, Vol. 1, says:

"Where there is no fund out of which the expenses can be paid, or the fund is not sufficient, the usual rule is that the party at whose instance the receiver was appointed should be required to provide the means of payment; and it is proper to tax such costs against him in like manner, as when a receiver is held to have been appointed without any probable cause for so doing.''

We are of opinion that the receiver is entitled to compensation and to the expenses he incurred in protecting the property that was wrongfully attached by the plaintiff. The receiver could not hold the defendant's property for his compensation and expenses. The defendant had done no wrong and justice demanded that his property should be restored to him, if possible in the same condition as when it was seized by attachment at the instance of the plaintiff, who, for a valuable consideration had procured the deposit company to obligate itself to be responsible to a certain amount for any damages sustained by the wrongful seizure of said property; and we are of opinion that it would not take an independent suit for the receiver to recover his compensation. The receiver is an officer of the court, properly appointed in the instant case, and the court had the right to tax the plaintiff and his surety on attachment bond with the cost incident to the receivership.

It is next very earnestly insisted that the court could not refer this matter to the clerk of the circuit court; that the clerk had no right

to act as Special Master. We are of opinion that the trial judge was in error in referring this matter to the clerk of the court; he should have heard the proof.

Section 5866 of Shannon's Code, provides:

"That the clerks of the civil courts in all equity cases in their courts, are vested with the powers of Clerks and Masters of the chancery court."

Section 5900 of the Code refers to the clerk of the chancery court, as follows:

"He is authorized to administer oaths and to perform all the functions of masters in chancery, unless restrained by the provisions of law; and to exercise all such other powers as are or may be conferred by law."

We find, however, that the undisputed proof establishes the receiver's claim of the amount allowed by the court to the receiver and for which we hold the plaintiff and his surety on the attachment bond is liable. While the court was in error in referring the matter to the clerk to report, this is not a reversible error and we will not reverse the judgment of the court for this error. We have the deposition of Scheibler before us. There was no jury that fixed his compensation, no necessity for the cause to be remanded, and on the deposition of Scheibler this court will do what the trial judge should have done—pronounce a judgment on Scheibler's deposition, or evidence.

It results that the assignments of error are overruled and disallowed and the judgment of the lower court is affirmed. Execution will issue against the appellant and his surety on appeal bond for the amount of the judgment rendered in the lower court. It being fixed as cost in the case, no interest will be allowed.

Senter and Heiskell, JJ., concur.