KMC CO., INC., Plaintiff-Appellant,

v.

Harvey E. NABORS and James Nabors, d/b/a Nabor's Food Giant, et al., Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section.

Oct. 28, 1977.

Certiorari Denied by Supreme Court March 13, 1978.

Wayne Christeson, Jr., Butler, Vines, Babb & Threadgill, Knoxville, for plaintiff-appellant.

Eugene Jared, Cookeville, for defendants-appellees, Harvey E. Nabors and James Nabors.

John P. Hudson, Cookeville, for petitioner-receiver.

## OPINION

[Recitation of Proceedings Below Abbreviated]

SHRIVER, Presiding Judge.

The plaintiff, KMC Co., Inc., filed a complaint in the Chancery Court of Putnam County, Tennessee on October 15, 1975 which was sustained as a general creditors' bill. After extensive proceedings involving the disposition of the assets of the defendant Harvey E. Nabors d/b/a Nabor's Food Giant, the Court found that the cost of administering the receivership, including the receiver's compensation and that of his attorney, amounted to $17,500.00 and decreed that the plaintiff, KMC Co., Inc., should pay one-half of the costs incurred, or $8,750.00.

From said decree, the plaintiff has appealed and assigned errors.

### Assignments of Error

There are two assignments, as follows:

"I. The order of the Court below charging costs to appellant is contrary to the established practices of equity and is not supported by any material evidence.

II. To affirm the judgment of the Court below would utterly destroy the established right of a general creditor to seek satisfaction under a general creditors' bill."

### The Pleadings and Proceedings Below

The original complaint states that the suit is brought on behalf of plaintiff and all of the creditors of the defendant, Nabor's Food Giant; that said defendant is indebted to the plaintiff in the sum of $22,218.48 for goods supplied to said defendant which is a retail establishment whose principal business is the sale of food and groceries.

It is averred that there are other creditors of the defendant which remain unpaid but whose names and amounts owed to them are unknown to the plaintiff and that there exists a danger of the assets of the defendant being lost and dissipated through the costs and expenses of a multiplicity of suits; that defendant is insolvent and cannot pay its debts as they mature, and that a receiver should be appointed to receive the income of defendant, to investigate claims being made against it, to direct its assets and pursue the claims on behalf of the defendant corporation against others.

A judgment by default was taken against the defendant but a motion was filed to set aside the default judgment and an answer tendered with said motion, admitting its indebtedness to plaintiff in the amount set forth in the bill of complaint but denying that defendant is insolvent.

On December 15, 1975, judgment for plaintiff was entered against defendants for $22,218.48 providing for the appointment of a Receiver if the judgment was not satisfied within thirty days.

On January 7, 1976, an order was entered appointing James D. Little Receiver on giving bond in the amount of $10,000.00.

Numerous claims were filed and certain creditors, including Commerce Union Bank and Maynard Food Store, filed petitions claiming right to possession of items of equipment in defendant store under conditional sales contracts.

Pursuant to a petition filed by the Receiver, an order was entered reciting that, by agreement, a threatened foreclosure sale was postponed.

Citizens Bank of Cookeville filed a claim and cross-complaint reciting that defendant was indebted to it in the amount of $159,735.04, secured by deeds of trust to certain property of defendants, and asked that it be sold and the proceeds of sale applied to the indebtedness of defendants according to priority.

The sale was held and the Receiver reported on the sale of the foregoing property to the Citizens Bank of Cookeville as the highest and best bidder for $175,400.00, and a decree vesting title was entered.

The Receiver also filed a preliminary report of monies received in the liquidation of the assets of the defendant Nabors Food Giant for a total of $16,037.38 and for miscellaneous funds received of $1,121.32, or a total of $17,158.70, a part of the merchandise equipment being secured by a trust deed in favor of the Bank of Cookeville.

Numerous motions and petitions and orders in response thereto were filed, including an order allowing an advance of $2,500.00 to the receiver and $2,500.00 to his counsel.

On February 10, 1977, the Chancellor entered an order fixing the Receiver's fee at $10,000.00 and that of John P. Hudson, his attorney, at $7,500.00.

And, finally, on the 9th day of March, 1977, the Court entered a document designated "Memorandum Opinion" which he ordered filed as a decree wherein it is recited that it appears there is no common fund of consequence out of which the costs of the cause could be paid and that costs would

have to be paid by the various parties participating in the case, and ordering that the plaintiff, KMC Company, Inc., pay one-half of the total cost and that the other one-half be paid out of the fund reserved and set aside from the proceeds of the sale.

## Our Conclusions

The record shows the following facts:

In the Fall of 1975, Harvey Nabors, a grocer, was insolvent such that he owed the appellant $22,218.48, owed a judgment of $8,857.00, owed a debt of $45,740.14 to C. B. Ragland Company, and had defaulted upon a real property mortgage such that the Citizens Bank of Cookeville had begun foreclosure proceedings. At this time, KMC Company, Inc., the appellant, presented these facts to the Trial Court seeking a general creditors' bill in equity and the appointment of a receiver. The Court gave Harvey Nabors thirty days to comply with his debt to appellant or it would appoint a receiver. After twenty-one days, Harvey Nabors voluntarily submitted to the receivership. Thereafter, the insolvent's property was inventoried and sold. The proceeds of the sale did not amount to enough to provide for anything but secured debts and there were no proceeds for the general creditors. The cost of the receivership was $17,500.00.

It is argued by counsel for the appellees that the appellant, KMC Company, Inc., caused the holders of prior mortgages to jointly incur total court costs of approximately $20,000.00, considerably more than the amount of the encumbered assets produced. It is asserted that the act of the KMC Company, Inc., in abandoning its role as plaintiff and not guiding the direction of the ensuing litigation resulted in the very large costs by way chiefly of fees to the receiver and his counsel which could have been avoided. It asserts that, therefore, the Chancellor was justified in taxing one-half of these costs to the appellant who procured a judgment in the proceedings for $22,218.48 and received not one penny in payment of this judgment debt.

The position of counsel for appellee, Citizens Bank of Cookeville and the Bank of Cookeville, seem to overlook the fact which is abundantly clear from the proceedings as set out hereinabove, that they each voluntarily filed petitions in the Court asking that the receiver take charge of the real estate and other assets which were held as security for their respective debts and that the receiver also voluntarily applied to the Court by motion and petition to have a scheduled sale of the property by the trustee under certain deeds of trust in favor of the Banks enjoined so that he could investigate and enter into the matter and, as above indicated, the Bank then petitioned the Court to have the receiver act in disposing of the property rather than the trustee under the trust deeds.

It is to be remembered that the receiver is an officer of the Court, appointed by him and subject to his instructions in respect to the property that he deals with.

It is strenuously argued by counsel for appellees that the plaintiff was derelict in its duty in not pursuing this case and giving direction to the proceedings. This overlooks two facts that seem relevant.

First, that the plaintiff had every right to seek the assistance of the Court in undertaking to conserve and protect the assets of the insolvent debtor and to try to collect the debt owing by the debtor to the plaintiff. We find nowhere in this record that the plaintiff misinformed the Court as to any facts relative to the defendant and the obligations it owed to the various creditors. There is no question but that the allegations in the original petition were true and correct and that, indeed, the debtor was hopelessly insolvent and that the appointment of a receiver was in order.

After the filing of the original petition, the Chancellor, finding that the debt to the plaintiff was legitimate, owing and past due, and considering the other circumstances indicated by the record, gave the defendant thirty days in which to liquidate the debt to the plaintiff; otherwise, a receiver would be appointed.

The record indicates that thereafter, before the expiration of the thirty days, the defendant and his counsel appeared before the Chancellor in Sparta, along with counsel for the plaintiff, and there voluntarily agreed that a receiver be appointed.

It became apparent that much of the equipment and goods in the defendant's store were held under conditional sales contracts with title retained by the seller, while other goods were on lend or lease to the defendant with no title in said defendant, and that there was very little by way of assets that were unencumbered, many of which facts were not known to the plaintiff and which were not readily available since there was no public record of many of these obligations.

Under these circumstances, counsel for plaintiff realized there was probably nothing to be gained for his client by continuing to pursue this suit. However, it is doubtful that he had any other choice but to let it proceed under the petitions, motions and proceedings instituted by the receiver and by the two appellee Banks and some other of the secured creditors.

It is to be remembered that the Chancellor was in full control of these proceedings. He appointed the receiver; he permitted the receiver to employ counsel who was not the counsel of record for the plaintiff; he allowed the intervening petitioners to make use of the receiver in the proceedings by which the secured property was sold and through him instead of requiring that the trustees under the trust deeds conduct their own sales with responsibility to report to the Court about the proceeds.

Thus it is that most of the costs which amount to $17,500.00 were not incurred at the instance of the plaintiff but were incurred through actions over which the plaintiff had no control.

In *Pope v. Knoxville Industrial Bank, Inc.,* 173 Tenn. 461, 465, 121 S.W.2d 530 (1938), the Court in dealing with the duties and authority of a receiver appointed in a general creditors' suit, said:

"A receiver derives his authority from the act of the Court appointing him, and not from the act of the parties at whose suggestion or by whose consent he is appointed; and the utmost effect of his appointment is to put the property from that time into his custody as an officer of the Court for the benefit of the parties ultimately proved to be entitled, but not to change the title, or even right of possession, in the property."

In 75 C.J.S. Receivers § 142, it is said:

". . . A receiver is, rather, for the time being, a ministerial officer and representative of the Court having charge of the receivership, and accountable to such Court, and has been referred to in some cases as an 'arm,' in other cases as a 'hand,' of the Court, and in still others as a part of its machinery. While the acts of a receiver are the acts of the Court for which he acts, the relationship of principal and agent does not exist between them; and since his appointment is for the benefit of all parties interested, he holds and manages the property for the benefit of those ultimately entitled and not primarily for the benefit of the party at whose instance the appointment was made."

It is further said (Sec. 144):

". . . The sole control of the receiver belongs to the Court by which he is appointed."

In Section 146, it is said:

"The administrative actions of the Court in charge of a receivership are at all times in its control, to be enforced or suspended as it sees fit, and, when mistakes occur, they are subject to its correction as long as it is administering the estate. So, the Court may enlarge or vary the powers and duties of the receiver as circumstances may demand . . ."

And, in Section 147, it is said:

"It is the duty of the Court to supervise and direct its receiver in his administration of the receivership, and to see that the property is handled by the receiver in such a way as best to serve the interests of all persons concerned. . . . "

As indicated by Gibson's Suits in Chancery, 5th Ed., § 1082, it is the general rule that the costs in a receivership proceeding are paid out of the proceeds in the hands of the receiver prior to distribution to the creditors and this rule is departed from only when an individual creditor is shown by the evidence to have a false claim or engaged in inequitable conduct.

Counsel for appellant cites *Sklar v. Bernstein,* 7 Tenn.App. 593, 601 (1928), where it is said:

> "Cases may arise in which the Court will, if the fund in Court be sufficient for that purpose, require the parties, at whose instance a receiver is appointed, to meet the expense of the receivership; but it has been held that *special circumstances must appear,* which upon equitable principles will authorize the Court to fix liability upon plaintiff for such expenses, and the *mere inadequacy of the property or fund to meet such expenses* constitutes in itself *no reason* why liability should be fixed upon plaintiff who has been guilty of no irregularity, and who has succeeded in a suit for obtaining the relief asked." [emphasis supplied]

For the reasons indicated herein above, we are impressed that it was unfair and inequitable to assess one-half of the costs of this cause to the plaintiff, including the receiver's fee and that of his counsel for a total of $8,750.00. He is not shown to have filed this case improvidently. We think the costs should be borne by those who are responsible for incurring the major part of them.

The estate coming into the receiver's hand for unsecured creditors was minimal, and justified no more than a minimal fee to the receiver and his attorney. The substantial fees awarded to the receiver and his attorney are justified only by the substantial assets which were encumbered, were not available to general creditors and which were liquidated by foreclosure sale for the sole benefit of secured creditors and at their specific request.

It results that the judgment of the Chancellor with respect to these costs is reversed and the cause remanded for the purpose of apportioning said costs equitably, that is, that the costs incident to liquidation of unencumbered assets for the benefit of unsecured creditors be paid out of the funds coming into the receiver's hands from the liquidation of such unencumbered assets, and that the costs incident to the liquidation of encumbered assets for the benefit of secured creditors be paid out of the funds coming into the receiver's hands from liquidation of said encumbered assets. If necessary, it would be in order to require secured creditors to restore to the receiver a sufficient amount of the money paid to them out of the latter fund to enable the payment of such costs.

REVERSED AND REMANDED.

TODD and DROWOTA, JJ., concur.