IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 14, 2005

## N. VICTORIA HOLLADAY v. CHARLES SPEED, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. 99-1112-2     Arnold B. Goldin, Chancellor**

_____

**No. W2005-01045-COA-R3-CV - Filed December 28, 2005**

_____

Plaintiff homeowner filed a cause of action against Defendant builder alleging breach of express warranty, breach of implied warranty of good workmanship, misrepresentation, and violation of the Tennessee Consumer Protection Act.  Plaintiff alleged damages in the amount of $15,000 and "other damages," and also sought punitive damages.  The trial court found no violation of the Consumer Protection Act and awarded Plaintiff damages in the amount of $11,103 for the cost of repairs.  Plaintiff appeals and Defendant cross-appeals.  We affirm in part, reverse in part, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part; Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Robert E. Craddock, Memphis, Tennessee, for the appellant, N. Victoria Holladay.

William Bryan Penn, Memphis, Tennessee, for the appellee, Charles Speed Contractors, Inc..

**OPINION**

        This lawsuit arises from damages to a home caused by alleged defects in an external insulation and finish system (EIFS) and Defendant's failure to make required repairs.  Defendant Charles Speed (Mr. Speed) is a licensed general contractor and a principal of Charles Speed Contractors, Inc. ("Speed Contractors;" collectively, "Speed").  In 1993, Speed began construction of a home at 77 Asphodel Drive in Memphis.  Henry Turley Realtors used the home as a model home, but it was not finally inspected by the Shelby County/City of Memphis Construction Code Enforcement Department until February 1996.  Plaintiff N. Victoria Holladay (Ms. Holladay) a licensed attorney and then a resident of New Orleans, entered into a contract for the purchase of the home in August 1996.  The purchase price was $237,500.  The contract included a clause stating that the offer was contingent upon a complete inspection, at purchaser's expense, satisfactory to purchaser. Prior to closing, Ms. Holladay provided Speed with a two page Addendum punch list to

the contract, listing fifty-two items which were to be repaired or completed prior to closing. These items included: 3) fix leak in hall ceiling; 18) replace missing area by chimney; 19) repair rotten wood outside sitting room window and rehang windows properly; 20) add spout for gutter on deck porch; 22) repair stucco on back porch, area near meter and chimney; 27) re-caulk and paint all windows; 37) fix west dining room windows - water damaged; 52) (provide) one year builder warranty. The parties closed on the contract for purchase on October 31, 1996. At the closing, Speed presented a two page limited warranty, which was signed by the parties. The warranty provided:

> We hope you will be happy in your new home. It has been constructed in accordance with accepted homebuilding practices. It has been inspected by our trained personnel and the building department . . . .

The warranty further provided that, for a period of one year, the roof would be free of leaks caused by defects in materials or workmanship, and that any substantial latent defect in material and/or workmanship would be repaired or replaced at no charge. Speed also represented that all the items on the punch list had been completed.

In March 1998, Ms. Holladay retained a realtor to attempt to sell the home, and signed a Tennessee Residential Property Condition Disclosure. In the disclosure statement, Ms. Holladay indicated that she was not aware of any defects or malfunctions in the interior or exterior walls, roof, or windows. On April 19, 1999, she entered a contract to sell the property for $350,000, contingent on the property being appraised for an amount equal to the sales price and on acceptance of Ms. Holladay's offer to purchase a home on Garden's Way. The closing for the Asphodel home was scheduled for May 14, 1999. Ms. Holladay's contract to purchase the Garden's Way home did not contain a clause making the offer contingent on her sale of the Asphodel property. However, as part of the appraisal process, the Asphodel property was inspected by Stucco Pro, a certified EIFS inspector. Stucco Pro determined that, although there were no high moisture readings, portions of the EIFS had been improperly installed, and the buyers refused to close until a detailed report by Stucco Pro had been completed. Because Ms. Holladay's purchase of the Garden's Way property was not contingent on her sale of the Aspodel property, she was contractually obligated to close on the Garden's Way property on May 14, 1999, without having sold the Asphodel property.

In early June, Stucco Pro delivered a detailed report indicating that all of the windows and doors in the house had been improperly sealed, that two windows in the den had rotten sills and were ripe for future water intrusion, that no kick out flashings were installed on the roof to divert water off the EIFS walls, that other windows also had rotten wood, and that several penetrations in the EIFS were not sealed properly. The purchasers then engaged another EIFS contractor, Richard Metzler ("Metzler") to provide an additional repair estimate. The Metzler bid indicated total repairs of $46,856, but included repairs not required by the Stucco Pro report. Therefore, the "as is" appraisal of the property was determined to be $303,000.

An additional inspection and report by architect Roland Taylor (Mr. Taylor), the "Taylor Report," was consistent with the Stucco Pro report regarding needed repairs. Ms. Holladay did not contact Speed regarding the necessary repairs, but had the repairs recommended by Stucco Pro and Mr. Taylor completed by other contractors. These repairs included removing sections of the EIFS around all exposed windows and doors and above the garage door; adding metal flashing to all; installing on each window and door a new surround of EIFS with a sloping edge at the top to prevent standing water; installing a one-half-inch wide joint between the new surround and the wooden window and door frames and caulking; installing kick out flashings; and repairing rotten wood window sills. On July 15, 1999, Mr. Taylor inspected the property and observed that the final repairs were properly completed.

Despite the completion of repairs, the purchasers refused to close and demanded the return of their $5,000 in earnest money. Ms. Holladay filed an action for specific performance in Shelby County Circuit Court, and the purchasers counterclaimed for return of their earnest money. The circuit court entered judgment for the purchasers and awarded them attorney's fees. After completing additional repairs, Ms. Holladay again put the Asphodel property on the market. On July 27, 2000, the sale of the property closed at a purchase price of $331,650.

In the meantime, on December 21, 1999, Ms. Holladay filed a complaint in Shelby County Chancery Court against Charles Speed and Charles Speed Contractor, Inc., and Sage Contractors, Inc. In her complaint, Ms. Holladay alleged breach of contract, breach of warranty, negligence, misrepresentation, violation of the Tennessee Consumer Protection Act, and breach of good faith.[1] She alleged damages in the amount of $15,000 and "other damages," and sought punitive damages, pre-judgment interest, and attorney's fees.

The cause was heard in December 2004 and January 2005, and the trial court entered its judgment on March 28, 2005. After making complete and detailed findings, the trial court determined Speed had breached the express warranties and implied warranties, including the implied warranty of good faith and fair dealing, by failing to use reasonable care to ensure the Asphodel property was built in a good workmanlike manner; by failing to build it to accepted homebuilding practices; by failing to inspect the work of his subcontractors; by failing to have "trained personnel" inspect the property; and by failing to ensure the manufacturer's specifications regarding EIFS were followed. The trial court determined, however, that Speed had not violated the Tennessee Consumer Protection Act. The trial court awarded Ms. Holladay damages in the amount of $11,103.16 for EIFS repairs; window and roof repairs that had not been properly completed by Speed; the replacement of carpet damaged by water leaks; the painting of windows, trim and walls; and the installation of kick out flashings as required by the building plans. The trial court also awarded Ms. Holladay court costs and discretionary costs. The trial court declined to award Ms. Holladay damages stemming from losses incurred as a result of her contractual obligation to purchase the Garden's Way property without having sold the Asphodel property. The trial court also declined to

---

[1] Ms. Holladay entered in to a mediated compromise settlement with Sage Contractors, Inc. and the trial court dismissed Sage Contractors from this lawsuit on July 24, 2003.

award Ms. Holladay amounts expended to make extensive repairs which the court found were not required by the May 1999 contract for sale, and which Ms. Holladay herself contended in her suit in circuit court resulted from overreaching by the purchasers. Ms. Holladay filed a timely notice of appeal to this Court, and Speed cross-appeals. We reverse the trial court's dismissal of Ms. Holladay's claim under the Tennessee Consumer Protection Act, and remand for the trial court to exercise its discretion to determine whether treble damages and attorney's fees under the Consumer Protection Act are warranted in this case. The judgment of the trial court is otherwise affirmed.

## *Issues Presented*

Ms. Holladay presents the following issues for our review, as we slightly re-state them:

(1)     Whether the trial court erred in dismissing Ms. Holladay's claims for breach of contract, negligent and intentional misrepresentation, negligence, and violations of the Tennessee Consumer Protection Act.

(2)     Whether the trial court erred in dismissing Ms. Holladay's claims against Charles Speed, individually.

On cross-appeal, Speed contends:

(1)     The trial court erred in awarding any damages to Plaintiff/Appellant.

(2)      The trial court incorrectly ruled that it did not have jurisdiction to rule upon the Appellee's motion to reconsider.

(3)     The trial court should have dismissed Plaintiff/Appellant's case as the statute of limitations was a bar to the cause of action.

## *Standard of Review*

We review the trial court's findings of fact *de novo*, with a presumption of correctness. Tenn. R. App. P. 13(d); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* Insofar as the trial court's determinations are based on its assessment of witness credibility, appellate courts will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Our review of the trial court's conclusions on matters of law, however, is *de novo* with no presumption of correctness. *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005). We likewise review the trial court's application of law to the facts *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

*Analysis*

We first address Speed's assertion that Ms. Holladay's action was barred by the statute of limitations codified at Tennessee Code Annotated § 28-3-202. This section provides:

> All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, such an improvement within four (4) years after substantial completion of such an improvement.

Tenn. Code Ann. § 28-3-202 (2000). Additionally, Tennessee Code Annotated § 28-3-203 provides:

> (a) Notwithstanding the provisions of § 28-3-202, in the case of such an injury to property or person or such injury causing wrongful death, which injury occurred during the fourth year after such substantial completion, an action in court to recover damages for such injury or wrongful death shall be brought within one (1) year after the date on which such injury occurred, without respect to the date of death of such injured person.
>
> (b) Such action shall, in all events, be brought within five (5) years after the substantial completion of such an improvement.

Tenn. Code Ann. § 28-3-203 (2000).

Speed contends the Asphodel property was substantially complete for occupancy in June 1994, and that Ms. Holladay's action, commenced in December 1999, is barred. Ms. Holladay asserts, however, and the trial court found, that her action is not barred by the four-year limitations period. Upon review of the record, we cannot say the evidence preponderates against the trial court's implicit factual determination that the home was not substantially complete so as to bar Ms. Holladay's action. At trial, Mr. Speed testified that the compressor was not installed and the home therefore had no air conditioning until June 1995, and that the carpet was laid in October 1995. Further, the final inspection certificate for the home was not issued until February 1996. We affirm on this issue.

In its statement of the issues, Speed also asserts that the trial court erred by incorrectly determining that it did not have jurisdiction to consider Speed's motion styled "motion to reconsider findings of fact and conclusions of law." In its argument section, however, Speed contends the trial court erred in denying its motion but does not address whether the trial court had jurisdiction to

consider the motion, which Speed asserts was a Tennessee Rule of Civil Procedure 52.02 motion.[2] We note that Speed filed the motion in the trial court on April 27, 2005, at 4:28, after having filed a notice of appeal to this Court at 4:05.

In general, under Rule 4 of the Tennessee Rules of Appellate Procedure, the jurisdiction of the appellate court attaches with the filing of a notice of appeal and, once an appeal has been filed, "the trial court effectively loses its authority to act in the case without leave of the appellate court." *First Am. Trust Co. v. Franklin-Murray Dev. Co.*, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001); *see also Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, 596 (Tenn.1994)(holding trial court has no jurisdiction to consider a Rule 60.02 motion when an appeal is pending)*; Spann v. Abraham*, 36 S.W.3d 452, 461 (Tenn. Ct. App. 1999)(holding trial court did not have jurisdiction to consider Rule 59.04 motion where notice of appeal had been filed the previous day). Under Rule 4 of the Rules of Appellate Procedure as it existed in April 2005, after a notice of appeal had been filed, a party seeking relief from a judgment pursuant to Rule 59, which includes a motion to amend or make additional findings of fact under Rule 52.02, arguably was required to seek an order of remand from the appellate court.[3]

_____

[2]Despite the style of the motion and Speed's failure to state, in the motion, under which rule of civil procedure the motion was made, we agree that the motion was substantively a Rule 52.02 motion to amend or make additional findings of fact made pursuant to Rule 52.02 and Rule 59.01 and 59.02.

[3]A Rule 52.02 motion made pursuant to Rule 59 must be made within thirty days of the entry of a final judgment. The motions enumerated in Rule 59.01, namely, motions made pursuant to Rule 50.02, 52.02, 59.02, and 59.04, "are the only motions contemplated in [the] rules for extending the time for taking steps in the regular appellate process." Tenn. R. Civ. P. 59.01. This Court has held that, in general, the trial courts lose jurisdiction to consider motions made after a notice of appeal had been filed. *First Am. Trust Co. v. Franklin-Murray Dev. Co.*, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001); *Spann v. Abraham*, 36 S.W.3d 452, 461 (Tenn. Ct. App. 1999)(holding trial court did not have jurisdiction to consider Rule 59.04 motion where notice of appeal had been filed the previous day)*; contra Glover v. Glover*, No. E2002-01690-COA-R3-CV, 2003 WL 465606 (Tenn. Ct. App. Feb. 25. 2003)(*no perm. app. filed*) (holding notice of appeal premature where Rule 59.01 motion filed on same day as notice of appeal)*;* see Robert Banks, Jr. and June F. Entman, *Tennessee Civil Procedure* §12.2 (2nd ed. 2004) for a discussion of post-trial motions.

The Tennessee Rules of Appellate Procedure were amended effective July 1, 2005, however, to include Rule 4(e), which provides:

(e) Effect of Specified Timely Motions on Trial Court's Jurisdiction. The trial court retains jurisdiction over the case pending the court's ruling on any timely filed motion specified in subparagraph (b) or (c) of this rule. A notice of appeal filed prior to the trial court's ruling on a timely specified motion shall be deemed to be premature and shall be treated as filed after the entry of the order disposing of the motion and on the day thereof. If an appellant named in a premature notice of appeal decides to terminate the appeal as a result of the trial court's disposition of a motion listed in subparagraph (b) or (c) of this rule, the appellant shall file in the appellate court a motion to dismiss the appeal pursuant to Rule 15.

Subsection (b) includes the four motions enumerated in rule 59.01. "New paragraph (e) makes clear that a trial court retains jurisdiction over such motions despite the premature filing of a notice of appeal." Advisory Commission Comment to 2005 Amendment.

We note, however, that the trial court stated that, in the alternative, it

> had fully considered all issues, both factual and legal, in the trial of this matter and had rendered a comprehensive Findings of Facts and Conclusions of Law and . . . was satisfied with the Findings of Facts and Conclusions of Law and [did] not find that the substance of the Motion to Reconsider [was] well taken, and, in fact, [found] that if considered, it would be denied.

Thus, in this case, any error on the part of the trial court with respect to jurisdiction is harmless where the court's alternative determination renders the issue moot. Assuming jurisdiction, the decision to grant a motion for additional findings under rule 52.02 is within the discretion of the trial court. *Long Equipment Co., Inc. v. Keeton*, 736 S.W.2d 611, 614 (Tenn. Ct. App. 1987). The trial court's decision in this case would not constitute an abuse of discretion.

We next turn to Ms. Holladay's assertion that the trial court erred in dismissing her claims against Mr. Speed, individually. In her brief to this Court, Ms. Holladay contends that Mr. Speed, as an individual, contracted for the sale of the Asphodel property. She further contends that Mr. Speed is the "sole shareholder" of Speed Contractors, Inc., and that, under the multi-factor test outlined in *Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135 (Tenn. Ct. App. 2003), the corporate veil of Speed Contractors, Inc. should be pierced. Ms. Holladay cites to no proof in the record, however, demonstrating that any of the *Oceanics* factors exist in this case. Further, we note that, although the one exhibit to which Ms. Holladay cites in support of her assertion that Mr. Speed acted as an individual and not in his corporate capacity arguably could support such a determination, multiple additional exhibits in the record demonstrate otherwise. This issue is without merit.

We next turn to whether the trial court erred in dismissing Ms. Holladay's claims for breach of contract, negligent and intentional misrepresentation, and negligence. The primary contention presented by Ms. Holladay's brief regarding this issue, as we perceive it, is whether the trial court erred in its determination of damages. Ms. Holladay asserts she is entitled to amounts expended to make all repairs to the Asphodel property and to expenses arising from her contractual obligation to purchase the Garden's Way property without having first closed on the Asphodel property.

Generally, the courts may award all damages which are the normal and foreseeable results of a breach of contract. *Morrow v. Jones*, 165 S.W.3d 254, 259 (Tenn. Ct. App. 2004). Such damages include reasonably foreseeable consequential and incidental damages. *Id.* In this case, however, even assuming, *ad arguendo*, Speed could be construed to have breached the parties' contract, we agree with the trial court that expenses arising from Ms. Holladay's contractual obligation to purchase the Garden's Way property were not consequential damages arising from an alleged breach of contract by Speed. Ms. Holladay is a licensed attorney and experienced home-buyer. That she would make an offer to buy the Garden's Way property without making the offer contingent on the sale of the Asphodel property clearly was not a foreseeable consequence of any alleged breach of contract by Speed. Further, the trial court found Ms. Holladay's testimony regarding her decision to purchase the Garden's Way property without a contingency to be not

credible. As noted above, we will not disturb a trial court's determination on matters of credibility without clear evidence to the contrary. We find no such evidence in this case.

If the trial court has utilized the proper measure of damages, the amount of damages is a question of fact which we review with a presumption of correctness. *Beaty v. McGraw*, 15 S.W.3d 819, 827 (Tenn. Ct. App. 1998). In this case, the trial court stated:

> [a]lthough the [c]ourt finds that Holladay was entitled to a house that was constructed in accordance with generally accepted construction standards, it does not find that all of the damages she seeks were a direct and consequential cause of the repairs she ultimately made to the property.

The trial court also noted:

> As stated in her [Ms. Holladay's] attorney's letter of May 21, 1999, to the Lowery's [potential purchaser of Asphodel property] attorney:
>
> "It is our understanding that the certified EFIS inspector found no moisture and only recommended minor repairs and minor preventative measures to ensure no future damage."
>
> In a followup letter of June 11, 1999, Holladay's counsel writes:
>
> "Mr. Meltzer's (the EFIS inspector for the Lowery's bank) report sent to Victoria Holladay has been reviewed. It is ludicrous to believe that it is accurate or acceptable.
> . . . Mr. Sterling (the Stucco Pro inspector) has indicated to Ms. Holladay that with the exception of the window repairs and the kick out flashings on the roof (sic), all other items in his report are 'preventative' and not repairs."

The trial court observed:

> Obviously, the Lowerys became reluctant purchasers and were attempting to have Holladay make extensive repairs to the property that she didn't believe were necessary or required by the contract. These extensive repairs were also not the obligation of the Defendant. Even Holladay thought the Lowerys were overreaching[.]

The trial court found the evidence in this case supports an award of damages limited to the cost of EFIS repairs, window and roof repairs that were not properly corrected by Speed, the replacement of carpet necessitated by the leaking roof, the painting of windows, trim and walls and the installation of kick out flashings as required by the house plans and supported by expert testimony. Whether attributable to breach of contract or breach of warranty, the evidence does not preponderate against the trial court's determination regarding the amount of actual damages.

We finally turn to Ms. Holladay's contention that the trial court erred in dismissing her claim under the Tennessee Consumer Protection Act ("the Act") as codified at Tennessee Code Annotated § 47-7-101, *et seq*. The Act provides, *inter alia*, that "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" constitutes an unfair or deceptive practice. Tenn. Code Ann. § 47-18-104(b)(7)(2001). Additionally, this Court has held that an unfair or deceptive act that was not intentional may be held to qualify as a violation of the Act. *E.g., Ingle v. Lilly Constr.*, No. E2004-02756-COA-R3-CV, 2005 WL 2051290, at * 8 (Tenn. Ct. App. Aug. 26, 2005) (*no perm. app. filed*). As we noted in *Ingle*, the Act also contemplates negligent conduct. *Id.* (citing *Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W.2d 9, 13 (Tenn. Ct. App. 1992)). The Act also provides that the court may award treble damages and "such other relief as it considers necessary and proper" if it finds that the employment of the unfair or deceptive act was a willful or knowing violation. Tenn. Code Ann. § 47-18-109(a)(3)(2001). Additionally,

> [i]n determining whether treble damages should be awarded, the trial court may consider, among other things:
> (A) The competence of the consumer or other person;
> (B) The nature of the deception or coercion practiced upon the consumer or other person;
> (C) The damage to the consumer or other person; and
> (D) The good faith of the person found to have violated the provisions of this part.

Tenn. Code Ann. § 47-18-109(a)(4)(2001).

Upon review of the record in this case, we believe Ms. Holladay has demonstrated a claim for violation of the Act. It is undisputed that Speed failed to inspect the EFIS as required, that he had no knowledge of EFIS installation, and that the EFIS was not installed with the appropriate flashings. It is also undisputed that Speed failed to properly repair some of the items on the Addendum to the sales contract. The trial court found:

> [Mr.] Speed testified that he had never built a house of EIFS before the Asphodel Property, and only once since, he did not know what was required to do so, he did not know whether there were any differences in building a home using EIFS and other materials, he did not inspect the work of his subcontractors, he gave no instructions to his subcontractors with regard to preparing the home as a[n] EIFS home, and he did not follow the architectural plans.

> [Mr.] Speed admitted that neither he nor anyone in his organization had any training in construction criteria for EIFS, no one in his organization inspected the Asphodel property's EIFS, and he had no knowledge of whether or not the EIFS was installed according to accepted home building practices.

[Mr.] Speed also acknowledged that he did not inquire of the subcontractor who installed the windows whether the subcontractor had any knowledge or skill as to installing windows in EIFS or even whether there were any special precautions which should be taken in that installation. [Mr.] Speed testified that he did not know if the architectural plans for the Asphodel property called for flashing in certain locations or whether they provided any special instructions relative to painting, caulking or installation of windows where EIFS was used. [Mr.] Speed also admitted that he did not know whether there were any special criteria for caulking where EIFS was used, and he gave the painter, who normally did the caulking as he painted, no special instructions about caulking the EIFS. Speed also admitted that he had no knowledge of whether any special treatment was required where the EIFS and brick met either at the time the Asphodel property was built or thereafter.

[Mr.] Speed testified that the only step he took to ensure the EIFS was applied properly was to hire a[n] EIFS subcontractor and that the bid from Sage Contractors to apply the EIFS did not include any reference to sealants or sealing to be done by them.

[Mr.] Speed testified that he purchased the architectural plans for building the Asphodel property, used those plans to obtain the appropriate building permits, and made changes to those plans, but obtained no modification plans from those originally drawn.

The architectural plans for the Asphodel property expressly address the application of EIFS stating "Contractor to follow all manufacturer's recommendations and specifications to provide a weatherproof and properly performing system including expansion and control joints in EIFS as per manufacturer's instructions." [Mr.] Speed never obtained the manufacturer's specifications for EIFS as used in the Asphodel property. The architectural plans call for flashing about all doors and windows. [Mr.] Speed disagreed with both the architect who drew the plans and Taylor about whether flashing was needed.

The trial court also noted that Mr. Taylor testified that the EFIS installation and lack of flashing did not meet residential construction industry standards; that the caulking and weatherproofing were not consistent with construction standards; that without the flashing shown on the plans, the house was incomplete; that leaving the flashing off would affect the EFIS system; that the standards had not changed in the past ten to fifteen years and that it was and is inappropriate to leave out flashing and caulking when installing EFIS. The trial court found that Mr. Taylor's testimony and report were consistent with the Stucco Pro report as to the repairs required to bring the EIFS up to industry standards.

Additionally, John R. Whalum, III, (Mr. Whalum) the owner of Sage Contractors and an approved EIFS applicator, testified that Mr. Speed did not give him a copy of the construction plans

for the Asphodel property and that Mr. Speed designated the areas where he wanted the EFIS applied. He also testified that Mr. Speed never asked him about installing flashing or applying sealants, and that his quote was for application only and did not include the installation of flashing, caulking or sealants. Mr. Whalum further testified that step flashing has always been required for EFIS.

In sum, despite having no experience with or knowledge of EIFS installation, Mr. Speed failed to review the EIFS manufacturer's recommendations and changed the architectural plans, removing flashings that were required by both the plans and industry standards. He assured Ms. Holladay, however, that the Asphodel property had been "constructed in accordance with accepted homebuilding practices" and that it had been "inspected by . . . trained personnel." It was not.

It is clear to this Court that the foregoing constitutes a deceptive act for the purposes of the Tennessee Consumer Protection Act. Had Speed merely relied on the approved architectural plans and the expertise of Sage Contractors for the appropriate EIFS installation, the deceptive act arguably could be characterized as negligent and not intentional. However, in light of Mr. Speed's modification of the plans and removal of the flashings without architectural approval, without warranty by expert installers that installation without flashings would not be contrary to accepted practices, and in contradiction of the manufacturer's recommendations, Mr. Speed's misrepresentations regarding the standard and quality of the Asphodel property constitute an intentional deception under the Act. We accordingly reverse the trial court's dismissal of Ms. Holladay's claims under the Tennessee Consumer Protection Act.

An award of treble damages under § 47-18-109(a)(3) for an intentional violation of the Act is permissive. Such an award depends upon the facts of each case. *Wilson v. Esch*, 166 S.W.3d 729, 731 (Tenn. Ct. App. 2004). In determining whether to award treble damages, the trial court may consider, among other things, the factors enumerated in § 47-18-109(a)(4). The determination of whether an award of treble damages is appropriate lies within the sound discretion of the trial court. *Id.* Additionally, under Tennessee Code Annotated § 47-18-109(e)(1), the trial court may award reasonable attorney's fees and costs upon a finding of a violation of the Act. Because the trial court has not exercised its discretion under § 47-18-109(a) (3) or (e)(1), we remand for consideration of whether an award of treble damages and an award for attorney's fees and costs to Ms. Holladay are justified in light of Speed's violation of the Act.

### *Holding*

We remand this matter for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Appellee, Charles Speed Contractors, Inc.

_____
DAVID R. FARMER, JUDGE

-11-