IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 12, 2010 Session

## RENNEE N. DHILLON v. GURSHEEL S. DHILLON

**Appeal from the Chancery Court for Williamson County**
**No. 33026      Robbie T. Beal, Chancellor**

_____

**No. M2009-02018-COA-R3-CV - Filed August 2, 2010**

_____

Husband challenges various rulings of the trial court in this second appeal of the post-divorce proceedings. Finding no error, the judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Gurshell S. Dhillon, Estill Springs, Tennessee, Pro Se.

Rennee N. Dhillon, Franklin, Tennessee, Pro Se.

**OPINION**

## I. Factual and Procedural History[1]

This matter is on appeal for a second time.[2] Gursheel Dhillon ("Husband") and Rennee Dhillon ("Wife") were married in 1999 in India. Wife filed for divorce on November 7, 2006, in Williamson County, Tennessee; Wife was pregnant with the parties' only child at that time. On October 7, 2008, the parties entered into a "Marital Dissolution Agreement

---

[1] We will only be reciting the history of the case pertinent to the issues presented in this appeal. The full history of the case can be found in this Court's opinion in the first appeal at *Dhillon v. Dhillon*, No. M2009-00017-COA-R3-CV, 2010 WL 1254365 (Tenn. Ct. App. Mar. 31, 2010).

[2] Husband represented himself in the first appeal, while Wife was represented by counsel. In this appeal, both parties appear *pro se*. In our consideration of the parties' briefs and arguments, we are obliged to apply less stringent standards, *see MBNA Am. Bank, N.A. v. Baker*, No. M2004-02239-COA-R3-CV, 2007 WL 3443600, at *3 (Tenn. Ct. App. Nov. 15, 2007), and have done so.

and Settlement Agreement Between All Parties," which set forth the grounds for divorce and the division of marital property. After hearing proof on parenting issues, the court adopted a Permanent Parenting Plan on November 11, 2008, which named Wife as primary residential parent, provided Husband with a visitation schedule, gave the parties joint decision-making authority regarding the child, and set Husband's child support obligation at $1,008.00 per month based on Wife's monthly income of $7,083.00 and Husband's monthly income of $10,000.00. The November 11, 2008 order and subsequent orders overruling motions to modify, alter or amend the order formed the basis of the first appeal.

On March 27, 2009, Husband filed a document titled "Exparte [sic] Petition for Emergency Temporary Restraining Order, Motion for Contempt, Petition for Emergency Hearing for Mental Examination of [Wife] and Home Study," in which he sought: (1) a temporary restraining order to restrict Wife's contact with the child after Husband discovered a burn on the child's right forearm; (2) a temporary modification to the parenting plan naming him the primary residential parent; (3) an order setting a hearing on Husband's contempt allegation against Wife that she engaged in "willful, intentional and negligent acts...against [Husband] and the minor child"; and (4) an award of child support to Husband based on income of Wife of $90,000.00 per year and an income of Husband of $29,000.00 per year. The trial court denied the motion, finding that "there d[id] not appear to be a substantial or significant threat of imminent bodily harm to said child"; the court set the matter for hearing on preliminary injunction for April 2.

On April 1, Wife filed an answer to Husband's petition and filed a counter-petition, alleging that there had been a substantial and material change in circumstances to warrant a change in the Parenting Plan, specifically a reduction in Husband's visitation until he received a psychological evaluation. Following the April 2 hearing, the trial court entered an order on April 9, dismissing Husband's petition on a finding that there was no evidence of neglect and that the child's burn was an accident; the court ordered Husband to pay Wife $500.00 in attorney's fees.

On May 15, Husband filed a Motion for New Trial and/or Alteration and Amendment of Judgment, seeking a new trial on various grounds; a modification of the Parenting Plan with regard to visitation and his child support obligation; a change in the primary residential parent from Wife to Husband; a finding that Wife misled the court and an award to him of attorney's fees as a "sanction"; and an inquiry into whether Wife's attorney made false statements to the court. Husband's motion was heard on June 30, and was denied in an order entered on August 11.

On June 23, Husband filed a Petition for Modification to Pendente Lite Support and Modification of Occupancy, seeking the termination of *pendente lite* payments to Wife [3]; an award of $161,328.00 to retroactively reimburse Husband for these payments; and a modification of possession of the marital residence to Husband since he was paying the full amount of the mortgage on the home and Wife "ha[d] substantial means to find other sources of living arrangements."

On July 9, Husband filed a Petition for Orders of Protection with the General Sessions Court, alleging that the child was malnourished and that Wife's family members, who were living in the marital residence with Wife, threatened his and the child's life, committed acts of violence and used profane language in front of the child. An *ex parte* Order of Protection was issued, granting Husband emergency custody of the child; a hearing on the order was set for July 24.[4] On July 14, Wife filed a Petition for Contempt and Enforcement and for Emergency Return of the Minor Child with the Chancery Court, alleging that Husband was in willful contempt of the court for failing to return the minor child after he obtained the Order of Protection and for failing to pay child support for three months. In an order entered on July 22, the Chancery Court interpreted Wife's July 14 petition, in part, as requesting an appeal of the Order of Protection issued by General Sessions Court; the court denied the request. After the July 24 hearing, the General Sessions Court dismissed the order of protection.

On July 28, Wife filed an Amended Petition for Contempt and Enforcement and for Emergency Return of the Minor Child, in which she restated the contempt allegations in the original petition and added a request that Husband be found guilty of contempt for failing to pay the $500.00 attorney's fee awarded to Wife in the April 9 order. Wife also filed a Petition for Modification of Parenting Plan Restricting Visitation, asserting that there had been a substantial change in circumstances such as to warrant a modification of the Parenting Plan; she sought that Husband's visitation be supervised or suspended pending a full psychological evaluation and that Wife be awarded sole decision-making authority for the child.

---

[3] While the record before this Court does not contain an order awarding Wife *pendente lite* support, this Court's opinion in Husband's first appeal reveals that the trial court entered an order in March 2007, ordering him to pay the mortgage on the marital residence as *pendente lite* support to Wife.

[4] The record from the proceedings in the General Sessions Court is not available for review on appeal. However, Husband's Petition for the Orders of Protection, the court's order granting the petition, and the order dismissing the Order of Protection were introduced as exhibits at the September 9 hearing in the Chancery Court and are part of the record on appeal; the transcript of the July 24 hearing is also available for review on appeal. At the hearing, Husband stated that he applied for the order in General Sessions Court because the Chancery Court was on vacation at the time.

On August 5, Husband filed a Motion for Contempt, alleging that Wife interfered with his visitation on a couple of occasions; that Wife "maliciously and willfully filed a false child negligence case with [the Department of Human Services]" against Husband[5]; and that Wife misstated her income to the court. Husband asked the court to find that Wife was guilty of contempt, that a substantial change in circumstances existed, and that Husband be named primary residential parent.

On August 11, 2009, the court held a hearing on Husband's Petition for Modification to Pendente Lite Support and Modification of Occupancy. The court allowed testimony from Husband's bankruptcy trustee regarding his monthly income and then continued the matter for a later date to consider all pending motions together. The transcript of the August 11 hearing reveals that the trial court did not consider Husband's petition relating to *pendente lite* support and the occupancy of the marital home because those issues were raised in Husband's first appeal and were pending in this Court at that time; the trial court concluded that it lacked jurisdiction to hear those matters.

On August 25, Husband filed an answer to Wife's petition and filed a counter-petition, seeking a finding that Wife was guilty of a Class E felony for filing a false child abuse report with the Department of Children's Services and that there was material change in circumstances to warrant a change in the primary residential parent and a modification of the child support award; Husband attached a proposed permanent parenting plan reflecting the changes he sought.

A hearing was held on September 8, 2009, on the various motions filed by the parties. In an order entered on October 2, the court dismissed all of Husband's motions, including his requests to hold Wife in contempt, to change primary residential parent, to modify child support, and to sanction Wife's attorney. The court then found Husband to be in criminal contempt and incarcerated him for ten days because he "willfully and intentionally misrepresented under oath [to the General Sessions Court] that there were no prior or pending matters involving the custody of the child when [Husband] knew full well that there were many prior matters in both Chancery Court...and...in the Court of Appeals" and that this "willful and untruthful behavior...resulted in an Exparte [sic] Order of Protection being issued and [Wife] being denied access to the minor child for a period of three (3) weeks with

---

[5] Wife states in her brief that, while the child was in Husband's custody, Wife made a request to the Department of Children's Services that someone check on the well-being of the child, in light of the child's "nutritional issues." At the September 8 hearing, Husband introduced a letter from DCS which stated that "[a]n investigation was completed and there was no evidence to support the allegations of Nutritional Neglect."

-4-

absolutely no contact with the child."[6]  The court also found Husband to be in civil contempt for failing to pay the award of $500.00 in attorney's fees to Wife and incarcerated him for ten days, but with the ability to partially purge himself of the contempt upon a payment of $250.00 and then the remaining $250.00 within 30 days thereafter.  The court then partially granted Wife's petition to modify the Parenting Plan by awarding her sole decision-making authority of the child; the court denied Wife's request to modify Husband's visitation with the child, other than suspending his visitation for three weeks "due to the fact that [Husband] withheld the child from [Wife] for three (3) weeks due to the merit less [sic] Ex Parte Order of Protection that he obtained by making false statements under oath."  Husband was ordered to undergo a psychological evaluation if Wife selected an examiner and paid for the appointments.  Lastly, the court awarded Wife attorney's fees in the amount of $7,500.00.  In an order entered on October 2, the court set a $10,000.00 bond on Husband's incarceration for the criminal contempt findings.  Husband filed a Notice of Appeal on August 13 and then again on September 22.

## II.  Statement of the Issues

Husband raises a number of issues regarding the proceedings in the lower court.  At oral argument, he stated that the focus of his appeal is the order entered on April 9 and the orders entered on October 2.  Upon a review of those orders and Husband's brief on appeal, we summarize his main issues as follows:

1.  Whether the trial court erred in failing to modify Husband's *pendente lite* payments and change the ownership of the marital residence from Wife to Husband.

2.  Whether the trial court erred by failing to modify his child support obligation.

3.  Whether the trial court erred by denying his petition to modify the parenting plan to name him primary residential parent of the child.

4.  Whether the trial court erred in finding Husband to be in criminal contempt.

---

[6]  The court also found that Husband altered the Parenting Plan by changing the times and days contained in the residential parenting schedule and that he presented the altered document to the child's preschool as a "lawful Order of the Court."  While the court concluded that his actions "disrespect[ed] the dignity of the Court," it did not find him to be in contempt or impose a punishment for this conduct.

### III. Standard of Review

Review of the trial court's findings of fact is *de novo* upon the record accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kaplan v. Bugalla*, 199 S.W.3d 632, 635 (Tenn. 2006). Review of the trial court's conclusions of law is *de novo* with no presumption of correctness afforded to the trial court's decision. *See Kaplan*, 199 S.W.3d at 635.

### IV. Analysis

*A.* Pendente Lite *Support and Marital Residence*

Wife was awarded possession of the marital residence in the Marital Dissolution Agreement and Husband was ordered to pay the mortgage on the home as *pendente lite* support in the trial court's March 2007 order, *see* footnote 3, *supra*. Neither of these documents are in the record presently before this Court. At the hearing on August 11, 2009, Wife's counsel pointed out that matters involving the *pendente lite* support and occupancy of the marital residence were on appeal; the court thereupon stated that "[w]hile this matter is on appeal, the Court will not modify any type of support obligation of [Husband]."

Husband asserts in his brief that "[t]he Trial Court failed to modify or suspend the Pendente Lite Support" and that the "Trial Court failed to modify the occupancy of the...Waterbury residence after evidences [sic] that [Wife] ha[d] made no contribution, ha[d] no equitable interest in the residence, and [wa]s housing third party occupancies [sic]." In his brief on appeal, Husband asserts, with regard to these issues, that the "Trial Court was with authority despite a pending Appeal to modify its own orders"; he makes no further argument and cites to no authority in support of this contention.

A review of this Court's opinion in the first appeal confirms that, among other things, Husband challenged the trial court's failure to modify the *pendente lite* support order, the order approving the Marital Dissolution Agreement and various orders refusing to set it aside. Since Husband raised issues relating to *pendente lite* support and occupancy of the marital residence in the first appeal, which was pending at the time he filed the Petition for Modification to Pendente Lite Support and Modification of Occupancy, the trial court was without jurisdiction to rule on those issues. *Holladay v. Speed*, 208 S.W.3d 408, 414 (Tenn. Ct. App. 2005) ("[T]he jurisdiction of the appellate court attaches with the filing of a notice of appeal and, once an appeal has been filed, 'the trial court effectively loses its authority to act in the case without leave of the appellate court.'"). The trial court properly declined to consider these issues.

*B. Child Support Obligation*

In his counter-petition filed August 25, 2009, Husband sought, among other things, a modification of the child support award which had been set in the order on November 11, 2008. Husband contends that the court erred in failing to modify the support in light of what he asserts were an increase in Wife's earnings and a decrease in his earnings since the entry of the decree.[7]

Upon our review of the record, we find insufficient evidence to support the levels of income asserted in Husband's proposed parenting plan. Husband provided no evidence of Wife's income[8] and cited only to his bankruptcy trustee's inconclusive testimony that Husband is given $3,500.00 per month out of the bankruptcy estate as income.[9] Attached to her response to Husband's Petition for Modification of Pendente Lite Support, Wife submitted her tax forms, which revealed that she earned $54,450.00 in 2007 and $89,737.50 in 2008; these forms reveal an average income of $72,093.75 per year and $6,007.81 per month. In the absence of evidence demonstrating a change in the parties' income levels that constitutes a significant variance in Husband's child support obligation, we find that the trial court did not err in finding that there was no evidentiary basis upon which to modify child support.[10]

---

[7] In the proposed parenting plan attached to his August 25 counter-petition, Husband listed his monthly income as $3,500.00 and Wife's monthly income as $8,200.00 per month; he did not include the new amount of support to be paid when inserting these figures into the Child Support Worksheet.

[8] In his brief on appeal, Husband cites only to his Petition for Modification of Pendente Lite Support as evidencing Wife's income; in the petition, Husband claims that Wife earned an average of $145,000.00 per year from 2006-2008, but, again, provides no reference to any evidence to support this statement.

[9] At the August 11 hearing, Husband had the following colloquy with his bankruptcy trustee during his testimony:

> Q. Okay. And what is the amount that is allowed to me by the bankruptcy court as my monthly income?
> A. Honestly, I don't recall exactly what that amount is as I set here. I'd have to look at my--
> Q. Let me try a figure, $3,500?
> A. That probably is correct. I wouldn't dispute that.

[10] "For all orders that were established or modified January 18, 2005 or after, under the income shares guidelines, a significant variance is defined as at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order." Tenn. Comp. R. & Regs. 1240-2-4-.05(2)(c).

*C. Parenting Plan*

Husband contends that the trial court erred by "refusing to acknowledge the neglect of the child" and by "not having a separate hearing for the best interest of the child when both parties stated a material change in circumstances." In support of this contention, Husband asserts that: (1) the child was suffering psychological effects while in Wife's care; (2) Wife was leaving the child with daycare for long periods of time; (3) Wife violated the Parenting Plan; (4) Wife was "unjustifiably"giving the child medication; (5) the child was experiencing weight loss and other medical problems while in Wife's care; (6) Wife denied Husband phone calls with the child; (7) Wife was alienating Husband from the child; and (8) the child had poor hygiene. We construe the issue to be whether the trial court erred in not modifying the Parenting Plan and naming Husband primary residential parent.

A valid custody order or residential placement schedule, once entered by the court, is *res judicata* as to the facts in existence or reasonably foreseeable when the decision was made. *Keisling v. Keisling*, 196 S.W.3d 703, 719 (Tenn. Ct. App. 2005); *Hoalcraft v. Smithson,* 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). Nonetheless, a residential parenting schedule may be modified where a material change in circumstances has occurred since the entry of the decree establishing the schedule which makes a change in the child's best interest. *Blair v. Badenhope,* 77 S.W.3d 137, 148 (Tenn. 2002); *In re M.J.H.,* 196 S. W.3d 731, 744 (Tenn. Ct. App. 2005); *In re Bridges*, 63 S.W.3d 346, 348 (Tenn. Ct. App. 2001). In determining whether there is a material change in circumstances, a court considers (1) whether a change has occurred after the entry of the order sought to be modified; (2) whether a change was not known or reasonably anticipated when the order was entered; and (3) whether a change is one that affects the child's well-being in a meaningful way. *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003) (citing *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002)). Only after a threshold finding that a material change of circumstances has occurred is the court permitted to go on to make a fresh determination of the best interest of the child. *Kendrick*, 90 S.W.3d at 569; *Blair*, 77 S.W.3d at 150; *Curtis v. Hill*, 215 S.W.3d 836, 840 (Tenn. Ct. App. 2006).

As a preliminary matter, we address Husband's challenge to the exclusion of two letters from the child's pediatrician to Husband which were tendered as exhibits by Husband in the course of the September 8, 2009, hearing. Husband sought to rely upon the content of the letters in support of his contention that a change of circumstances had occurred and had the following colloquy with the court in the course of introducing the letters:

> [Husband]: ...I submit the doctor's notes that [Wife] testified that Dr. Townsend is the child's pediatrician. And I shall submit all her notes which shows that nannies and daycare are taking care of this child.

THE COURT: And theses are notes from whom, please?

[Husband]: From the pediatrician, Your Honor.

THE COURT: Do you have an objection...?

[Wife's Counsel]: Yes, Your Honor, hearsay....

***

THE COURT: ...As far as the hearsay issue..., I'll allow [Husband] to testify as to what he believes the medical condition of his own child is.

To allow letters from a pediatrician, I think goes beyond what is even contemplated by hearsay exception for purposes of abuse. If the witness is that important, the pediatrician needed to be here.

[Husband], you can testify as to what you believe the medical care and condition of your own child is, but not what some other pediatrician may have said.

We find that the trial court did not err in excluding the letters, which were clearly hearsay[11] and which were, according to Husband's statement to the court, offered to prove one or more of the factual allegations in support of his effort to be named primary residential parent. The letters were inadmissible unless they came within an exception to Tenn. R. Evid. 802. Husband made no argument at trial and makes none on appeal that the letters come within an exception to the hearsay rule. In our review, we fail to see a basis for admitting the letters.

The remainder of the factual allegations made by Husband in support of his request for a modification of custody either do not contain a citation to the record, have an incorrect citation, or cite to evidence which does not support Husband's assertion. Nevertheless, we have reviewed the record and concur in the trial court's conclusions that there was no evidence of neglect or mental abuse by Wife. We, consequently, affirm the court's denial of Husband's petition to modify the residential parenting schedule.

*D. Criminal Contempt*

Husband argues that the trial court erred in its criminal contempt findings because he did not receive proper service or notice of the charges and because the issue should have

---

[11] "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801.

been precluded by the doctrines of *res judicata* and collateral estoppel; he also asserts that the court erred in awarding attorney's fees to Wife on a criminal contempt charge.[12]

Tenn. Code Ann. § 29-9-102(3) provides courts with the power to punish a party for contempt of court when the party is in "[t]he willful disobedience or resistence of any officer of the such [sic] courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." Tenn. Code Ann. § 29-9-102(3). Criminal contempt sanctions are punitive in nature, and "preserve the power and vindicate the dignity of the court..." *Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d 908, 912 (Tenn. 1964); *Long v. McAllister-Long*, 221 S.W.3d 1, 12 (Tenn. Ct. App. 2006). "The matter of determining and dealing with contempts is within the court's sound discretion, subject to the absolute provisions of the law and its determination is final unless there is plain abuse of discretion." *Robinson*, 377 S.W.2d at 912 .

*1. Service of the Petition for Criminal Contempt*

Husband contends that he was not properly served with Wife's Petition for Contempt, citing to the transcript of the August 11 hearing. We have reviewed the transcript and do not find that Husband made a specific objection to the manner of service of the contempt petition.[13] Our review of the record shows also shows that Husband made no objection to the manner of service in the answer he filed to the petition.

Both Wife's Petition for Contempt and the attached Notice of Constitutional Rights contained a Certificate of Service certifying that the Petition was served on July 10, 2009,

---

[12] Husband asserts other issues regarding the criminal contempt findings, which we find to be without merit. First, Husband contends that the court failed to "notice a bond," however, the trial court set a bond in its October 2 order. Husband also argues that the court "unlawfully incarcerat[ed] [him] when there was substantial doubt and denial to the allegations of forgery"; the court's September 9 order, however, did not find Husband to be in criminal contempt on the forgery allegations nor did it incarcerate him on such a finding. Lastly, Husband asserts that the court denied his "Habeus [sic] Corpus Petition for Hearing"; no such petition, however, is found in the record before this Court. The transcript of the September 8 hearing reveals that, after the court's ruling, Husband posed a question to the court regarding habeas corpus, but no action was requested by Husband at that time or after the hearing.

[13] At the August 11 hearing, the only matter heard was the testimony of Husband's bankruptcy trustee. After the completion of the testimony, the parties discussed Husband's petition to modify the *pendente lite* support and Wife's response thereto and, in the course of the discussion, Husband made the following statement: "Your honor . . . this is not the first time I have been improperly served. I think this is probably the fourth or fifth time I have been improperly served." The hearing on the contempt petition was held on September 8 and no objection was made by Husband at that hearing to the adequacy of service of the petition.

-10-

to Husband's address and fax number and that the Notice was served on July 14, 2009, at Husband's address. "The certificate of service required by Tenn. R. Civ. P. 5.03 is *prima facia* evidence that the document was served in the manner described in the certificate and raises a rebuttable presumption that it was received by the person to whom it was sent." *Estate of Vanleer v. Harakas*, No. M2001-00687-COA-R3-CV, 2002 WL 32332191, at *8 (Tenn. Ct. App. Dec. 5, 2002). Thus, we find that Husband received proper service of the Petition.

### 2. *Notice of the Petition for Criminal Contempt*

A defendant facing a criminal contempt charge must be "given explicit notice that they are charged with criminal contempt and must also be informed of the facts giving rise to the charge." *Long, supra.* The content of notice is prescribed by Tenn. R. Crim. P. 42(b).

Wife's Petition for Contempt alleged that Husband lied to the General Sessions Court in his petition seeking the *ex parte* Order of Protection by checking a box that stated "Petitioner is not aware of any prior pending actions concerning the custody of the parties' minor child in this or any other State"; the petition then requested that Husband "be punished by powers of criminal contempt and incarcerated for his willful failure to abide by the lawful Orders of this Court." A Notice of Constitutional Rights was attached to the petition stating that Husband was "hereby being charged with Criminal Contempt pursuant to T.C.A. § 29-9-101, et. seq., for violation of the previous Orders of this Court." Husband thereafter filed an answer to the petition on August 25.

We find that the petition complied in all respects with Tenn. R. Crim. P. 42(b). Moreover, while the petition was being discussed at the August 11 hearing, Husband made no objection to the adequacy of notice of the conduct alleged to constitute contempt; neither did he raise such an issue in the answer he filed to the petition.

### 3. Res Judicata *and Collateral Estoppel*

In ruling on the contempt allegation, the Chancery Court stated that:

...[T]he order of protection clearly states that [Husband] filed in general sessions court that there were no pending matters as it relates to custody with this child. There obviously are several matters pending; not only with this Court, but with the Court of Appeals as it applies to this child. That is contempt - - a contemptuous action. He's basically misrepresented to another Court the status of hearing in this Court. That's a contemptuous action. He should be held in contempt for such.

The court's order reflected these statements and concluded that Husband's "willful and untruthful behavior [wa]s in contempt of the sanctity and integrity of the Court."

Husband asserts that "the Issue of Perjury on the Ex-parte order should have been precluded by Res Judicata, Claim Preclusion, [and] Collateral Estoppel." We construe Husband to be contending that, since the General Sessions Court made a final ruling on the *ex parte* Order of Protection without finding him to be guilty of contempt, *res judicata* or collateral estoppel prevented the Chancery Court from considering contempt based on matters related to the General Session Court proceeding.

"The doctrine of res judicata bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987). "Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit." *Id*.

The only matters litigated in the General Sessions Court were the allegations Husband made in the petition he filed seeking the order of protection; after granting an *ex parte* order, on further hearing the General Sessions Court dismissed the proceeding. The contempt finding, however, was based on Husband's representation to the General Sessions Court that there were no matters pending elsewhere related to the custody of the child, a willful and deliberate misrepresentation in that court which also impugned the integrity of the Chancery Court. While the representation that gave rise to the contempt finding occurred in a proceeding in General Sessions Court, the Chancery Court's order holding Husband in contempt was intended to vindicate the authority of the Chancery Court and foster obedience to its orders. *Robinson, supra.* The Chancery Court proceeding addressed neither the same cause of action nor the same issues as the General Sessions Court; consequently, those doctrines do not apply.

*E. Attorney's Fees*

The trial court awarded Wife $7,500.00 in counsel fees for her defense of the pleadings filed by Husband and in connection with the amended petition for modification and contempt she filed. Husband contends that the trial court erred and demonstrated "bias and prejudice" in making the award.

Courts have discretion to award fees in proceedings to enforce or defend custody and support orders pursuant to Tenn. Code Ann. § 36-5-103(c); this authority extends to criminal

contempt proceedings which involve custody or support. *Clarkson v. Clarkson*, No. M2006-02239-COA-R3-CV, 2007 WL 3072772, at *8, n.2 (Tenn. Ct. App. Oct. 22, 2007) (citing *Butler v. Butler*, No. 02A01-9409-CH-00218, 1995 WL 695123, at *2 (Tenn. Ct. App. Nov. 21, 1995); *Larson v. Halliburton*, No. M2004-02435-COA-R3-CV, 2007 WL 1241343, at *4 (Tenn. Ct. App. Apr. 27, 2007); *Cooner v. Cooner*, No. 01-A-01-9701-CV00021, 1997 WL 625277, at *7 (Tenn. Ct. App. Oct. 10, 1997)).

We find nothing in the record to support a finding that the court abused its discretion in making the award.

*F.* Ex Parte *Communications*

Husband contends that the "Court erred by allowing Ex-Parte Communication throughout the Trial and throughout Post-Trial motions and hearings." In support of his contention, Husband cites to the General Sessions Court's *ex parte* Order of Protection, the Chancery Court's July 22 order addressing Wife's appeal of the Order of Protection, and the testimony of Wife at the September 8 hearing, during which she stated that she saw the General Sessions judge at the clerk's office when she was there to question the order of protection. We have reviewed these citations and see no evidence of *ex parte* communications between the trial court and Wife or her counsel.

*G. Sanctions Against Wife's Attorney*

Husband asked the trial court to impose sanctions against Wife's attorney based on alleged misrepresentations made to the trial court; the trial court denied his request. While he does not assign error on appeal to the denial of his request, he makes the same allegation and cites Rule 11, Tenn. R. Civ. P.

The imposition of sanctions pursuant to Rule 11 in the first instance is not within the authority of this Court;[14] therefore, Husband's request that we impose sanction under that rule is not proper. To the extent that Husband is challenging the trial court's denial of his request for sanctions, we affirm the ruling of the trial court. While Husband asked in the course of a hearing that the court award sanctions for what he said were misrepresentations by Wife's attorney, he never moved for such in accordance with the Rule.

---

[14] Tenn. R. Civ. P. 11.03(1)(a) states that sanctions under this rule may be initiated by filing a motion for sanctions with the trial court and serving the motion upon the opposing party as provided in Rule 5, Tenn. R. Civ. P.

*H. Alleged Bias of the Trial Court*

Husband argues that the "Trial Court ha[d] become emotionally involved whereas he [wa]s making irrational judgments that are contrary to the law and facts of record and clearly indicated of the [sic] significant bias of the trial court." Husband lists a number of actions by the trial court as evidence of this bias, including the suspension of his visitation for three weeks, while not awarding the same to Husband for his lost time with the child due to Wife's alleged perjury, and the award of attorney's fees to Wife. Husband also relies on some of the trial court's orders, which were resolved in favor of Wife, as support for his evidence of bias. Other than citing to these adverse actions of the trial court, Husband fails to argue this point any further.

"All litigants have a right to have their cases heard by fair and impartial judges." *Davis v. Tennessee Dept. of Employment Sec.*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999). "Parties who challenge a judge's impartiality must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned." *Id*. "Impartiality concerns involve a judge's personal bias or prejudice against a litigant." *Id*. This bias or prejudice, however, "must come from an extrajudicial source and not result from the judge's impressions during trial." *Eldridge v. Eldridge*, 137 S.W.3d 1, 7 (Tenn. Ct. App. 2002). "If this were not the case, a judge who makes a ruling adverse to one of the parties would be subject to charges of bias and prejudice." *Id*.

Upon a review of the record and the transcripts, we find no evidence of a bias or partiality on the part of the trial court. Husband presented no evidence from an "extrajudicial source" of the trial court's bias or prejudice; instead, Husband relies on adverse rulings, which are not sufficient to prove impartiality. *Eldridge*, 137 S.W.3d at 7 (quoting *Alley v. State*, 882 S.W.2d 810, 821-22 (Tenn. Crim. App. 1994)) ("'Indeed, adverse rulings by a trial court are not usually sufficient grounds to establish bias. Rulings of a trial judge...do not, without more, justify disqualification.'"). Therefore, Husband's allegations of bias are without merit.

*I. Other Issues*

Husband assigns error to various other actions and holdings of the trial court in the Statement of the Issues and throughout his brief. However, these assertions are either not argued, unsupported by citation to legal authority and/or to the record, or otherwise inadequately presented for review. They include Husband's contentions that the trial court erred by improperly communicating with this Court; by failing to enforce his subpoenas; by failing to allow for the deposition of Wife; by failing to find Wife guilty of a Class E felony;

by failing to find Wife guilty of perjury; by awarding attorney's fees that were excessive; by causing a loss of property and damage to Husband, necessitating relief under 42 U.S.C. § 1983; and a bare reference to the Protective Parent Reform Act, Tenn. Code Ann. § 36-6-112.

Tenn. R. App. P. 27(a)(7) provides that "[t]he brief of the appellant shall contain...: (7) An argument...setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record...relied on." A "[p]laintiff's failure to comply with the Rules of Appellate Procedure and the rules of this Court waives the issues for review." *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000). Even applying less stringent standards in light of the fact that Husband is proceeding *pro se*, the lack of substance and completeness to the arguments cannot be ignored and the effect minimized. As noted by the court in *Bean,* we are under no duty to verify unsupported allegations in a party's brief or to consider issues raised but not argued in the brief. These issues have been waived.

## V. Conclusion

For the reasons set forth above, the trial court's judgment is AFFIRMED. Costs of this appeal are assessed against Husband for which execution may issue if necessary.

_____
RICHARD H. DINKINS, JUDGE