# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
## November 8, 2011 Session

## JAMES FITZPATRICK DENDY, v. AMY MICHELLE DENDY

**Appeal from the Circuit Court for Knox County**
**No. 107628     Hon. Bill Swann, Judge**

---

**No. E2010-02319-COA-R3-CV - Filed March 5, 2012**

---

This divorce case covered a span of years in the Trial Court, and the Trial Court ultimately granted the parties a divorce, awarded primary custody of the children to the father, denied alimony to the mother and divided the marital estate between the parties. The mother appealed and has raised numerous issues. Many of the issues raised pertain to matters occurring after the appeal was filed, and we decline to consider these issues. The record establishes the mother did not attend the final hearing wherein the divorce was granted. We vacate that part of the final decree, dividing the marital assets and liabilities, on the ground that the mother established grounds of excusable neglect for failing to attend the trial, and remand to the Trial Court to grant a new trial on this issue. We otherwise affirm the rulings in the Judgment by the Trial Court.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Vacated in Part.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which  D. MICHAEL SWINEY, J.,  and JOHN W. MCCLARTY, J., joined.

Elliott J. Schuchardt, Pittsburgh, Pennsylvania, for the appellant, Amy Dendy.

James Dendy, Norris, Tennessee, *pro se.*

# OPINION

## Background

From the time this divorce action was commenced in the Trial Court until the Trial Judge entered the Final Judgment of Divorce the case covered a span of approximately three years. The Trial Judge was not responsible for the long delay in resolving the issues, rather, it was due to both parties filing repeated motions, changing their representation by attorneys, and occasionally taking intractable positions.

The parties were married on October 9, 2004, and the father filed a complaint for divorce on July 16, 2007. The father based his complaint on irreconcilable differences and inappropriate marital conduct on the part of the mother pursuant to Tenn. Code Ann. § 36-4-102(11). He averred that due to psychological and emotional problems suffered by the mother, that he was best suited to provide primary care for the children. Based on the father's belief that the mother was a danger to herself and that she had emotionally abused the children, he sought an injunction granting him physical custody of the children and enjoining the mother from "interfering with that custody". The requested temporary injunction was issued by the Trial Court.

Later, on that same day, the mother filed a complaint for divorce based on irreconcilable differences and inappropriate marital conduct on the part of the father. The mother also filed a motion for emergency relief from the temporary injunction, claiming the father had "clandestinely absconded" with the children.

The motion for emergency relief from the temporary injunction was heard by the Trial Court, and an agreed order was entered on August 8, 2007 which named the father as the primary residential parent and granted the mother co-parenting time for four to five hours per day several days a week. The mother's time was to be supervised by her uncle and the father was to transport the children to the visits with the mother. The Trial Court also entered an order for a parenting evaluation to be conducted by Dr. Lance Laurence on the mother, father and the children.

The case was referenced for mediation and was mediated for the first time on September 21, 2007. The mediator reported the parties were not able to reach full agreement on all of the issues, and the "Interim Mediated Agreement" states that a "Temporary Parenting Plan" agreed to by the parties was attached, however it is not in this record. Apparently, the supervised visitation initially imposed on the mother was lifted following the mediation because the Mediated Agreement, as represented, states the mother can pick up and drop off the girls at a day care center. Another mediation was held in March 2008 and

the "Interim Mediated Report" reflects that the parties were not able to reach agreement on any issues.

The Trial Judge entered a Trial Management Order setting the trial date for July 15, 2008. The Order reflects that the issue of primary residential parenting and co-parenting would be tried at the July 15, trial date, Dr. Laurence would update his report by June 15, 2008 and that all discovery would be propounded by May 15, 2008 and answered by June 15, 2008. The Order referred the child support issue to the Child Support Referee and reflected that the parties had agreed to place the marital residence on the market for sale. The mother, who was seeking transitional alimony, was to prepare an alimony proposal prior to the next trial management conference.

On April 7, 2008, counsel for the mother filed a motion to withdraw as counsel, based upon the mother's failure to pay attorney's fees. The motion was granted on April 21, 2008. The mother then filed a motion for contempt against the father, *pro se*, alleging the father's failure to make mortgage payments. A hearing on the motion for contempt was held on June 18, 2008. At that hearing, the Court ordered that the marital residence be listed "as is" for sale by June 20, 2008 and "shall be shown vigorously." The hearing on the contempt motion was postponed to the trial date.

The trial date of July 15, apparently was continued, although the record does not so reflect. Another mediation occurred on August 13, 2008 and some of the issues appear to have been resolved. The trial was reset for February 3, 2009, and the mother subsequently filed a petition for alimony pendente lite. A Trial Management Conference was held on December 5, 2008 and a Trial Management Order was entered on January 14, 2009. Deadlines for discovery and depositions were set, the matter of child support was referred to the Child Support Referee, and the matters of primary residential and co-parenting and transitional alimony were reserved for trial. The Court ordered that the sale price on the marital home be reduced by $10,000.00 and that the price continue to be reduced on the 5th of each month, until the house sold.

The trial was apparently continued to March 16, 2009, although there is no order of continuance in the record. The matter was heard on March 16-17, 2009 and an Order was entered on April 14, 2009. The Order reflects that the protocols set forth in *Anderton v. Anderton*, 988 S.W.2d 675 (Tenn. Ct. App. 1998) were followed and that the two days of trial were dedicated to custody and co-parenting of the minor children. The Order provides:

1.      There shall be an absolute injunction against the Mother coming about the Father at any time subject to a finding of criminal contempt. There shall be an

absolute injunction against both of these parties having any oral communication with each other whatsoever. Any and all communications allowed between these parties shall be by U.S. Postal Service, text message, or email. In all instances, it shall be written and it shall be preserved.

2. There shall be no communication between the children and the Mother apart from the U.S. Postal Service or during supervised co-parenting time at Parent Place. Any communication with the children via U.S. mail shall be addressed care of the Father.

3. The Mother is absolutely enjoined from any denigration of the Father or the Father's loyalty to or in the presence of the children.

4. There shall be an absolute injunction against Mother as to any discussion of litigation or its issues to or in the presence of the parties' children.

5. These injunctions shall apply to all communications between the Mother and children, including those by U.S. Postal service.

6. The Mother shall have co-parenting time with the parties' minor children at Parent Place to be supervised at all times. A copy of this Order and the Memorandum Opinion shall be provided to Parent Place. The Father shall cooperate with Mother to schedule time at Parent Place and said schedule shall include a 15 minute buffer so that the parties have no interaction with one another at Parenting Place. The Mother shall bear the expense of said co-parenting time at Parent Place.

7. The Mother is enjoined from ever taking these children to a medical doctor or facility or to a psychologist or counselor.

8. Pursuant to T.C.A. § 36-6-4106(a)[sic][1], the Father shall be the sole residential custodian of the parties' minor children. He shall be the sole medical custodian and the sole educational custodian as well.

9. There shall be no variation from this Court's order with regards to the co-parenting of the children or the communication between the parties whatsoever. There shall be no variation from these orders by agreement of the parties.

---

[1] T.C.A. 36-6-410?

10. Copies of Memorandum Opinion and this Order shall be provided to Dr. Lance Laurence, to Dr. Grellow, his associate and to both counsel.

11. The matter of child support is hereby referred to the Child Support Referee. At such time as the child support has been determined by the Child Support Referee or stipulated by counsel, further hearing shall be scheduled to address the issue of classification of property and then to equitable distribution issues. Upon resolution of those issues, the Court will entertain the Mother's request for transitional alimony in the amount of $1,500.00 per month.

12. By separate order, the Petition for an Order of Protection by Amy Dendy against James Fitzpatrick Dendy on May 28, 2008, and ex parte Order pursuant thereto shall be dismissed.

13. All issues not specifically addressed by this Order are reserved pending further hearing in this matter.

The mother filed a Notice of Appeal of the judgment on April 16, 2009, incorrectly stating that the date of the judgment appealed from was March 17, 2009 instead of April 14, 2009, the date the judgment was entered.

On August 3, 2009, the mother's counsel filed a motion to withdraw based on the mother's failure to pay his fees and the motion was granted. The next phase of the divorce proceeding was set for trial on July 27, 2010.

Child support issues were heard by the Magistrate on February 2, 2010, and the Magistrate's findings and recommendations were that the mother current's child support obligations were $498.00 a month, that she was in arrearage of $5,229.00 and that she was ordered to pay $32.00 a month in addition to her monthly obligation. The father was responsible for medical support of the children, and the Trial Court adopted the findings and recommendations of the Magistrate by order dated February 26, 2010.

Next, the mother filed a motion for temporary spousal support, *pro se,* which was heard by the Trial Judge on April 21, 2010. The Court found the mother was unemployed and had not taken "any employment other than some small amount of contract work." The Court concluded that "this is not a case for *pendent lite* support", but further ordered the father to provide documentation of his income to the mother's counsel.

On May 10, 2010, the mother, through newly obtained counsel, filed a motion to modify the custody order. The motion was heard on May 12, and an order modifying the

April 14, 2009 order was entered on May 17. The mother was authorized to participate in therapy with the children at a program sponsored by Child & Family Tennessee, as often as twice a week.

On June 9, 2010, the mother's third attorney in this case filed a motion to withdraw based on his relocation to another state. The Court granted the motion and at that juncture, the mother again was representing herself in the case.

The last stage of the proceeding was heard on August 10, 2010. The mother, whose counsel had withdrawn previously, was not present at the hearing. The Trial Court entered a Final Judgment of Divorce on August 20, 2010, and the judgment states that the final day of trial in this matter was held on August 10, 2010 and was dedicated to the question of equitable division of the marital estate, the granting of the divorce and the question of spousal support. The judgment reflects that the mother failed to attend the trial on August 10, 2010 and that the Court took note of her failure to appear, noting that she had notice of the trial date and that the Court had moved the trial date forward from July 27th to August 10th by granting the case priority over the docket. The Trial Court held as follows:

1.      Divorce was granted in favor of James Dendy on the ground of inappropriate marital conduct on the part of the mother.

2.      The April 14, 2010 Order regarding child support and child custody remains in effect as modified by the June 23, 2010 order allowing the mother co-parenting at Child and Family Tennessee.

3.      The mother's request for spousal support was denied. The Court found that the fault of the divorce "strongly favored" the father and that the mother had "wreaked economic havoc on the marital estate." The Court found that the mother had a Master's Degree and was only a few hours short of obtaining a second Master's Degree. The Court concluded that she required no rehabilitation and there was no merit to the argument that she was "entitled to financial underpinning from this father."

4.      The Court found that the mother's education was superior to the father's and that her ability to secure employment and compensation was at least equal to that of the father's and that the marriage had been brief. The Court stated that the parties are young, are physically well and have no separate assets. The Court stated that the standard of living in the marriage was artificial due to the mother's unfettered pursuit of debt.

-6-

5.    The debts were divided as follows:  The father is responsible for the American Express Card, Capital One Card, the note on the Volkswagen Passat, 60% of the balance of the second mortgage note and 60% of the debt owed to his father.  The mother was responsible for the deficiency owed to Teacher's Credit Union for the loan on her repossessed car, 40% of the balance on the second mortgage note and 40% of the note owed to the father's father, the balance of the debts on the Master Card, the Limited card, the Express card, the Firestone card, the Belk card, the Capital One card in her name and any medical expenses she had incurred.  The Court expressed the opinion that the mother had "lived off the cards assigned to her and that she has received the entire benefit of those balances and it is appropriate that she be responsible for those debts." The mother's student loans were found to be premarital and, as she received the benefit of those loans, she should pay them.

On September 10, 2010, the mother filed a "Motion to Open Default Judgment and/or Motion for Reconsideration".  She stated she did not attend the August 10, 2010 trial because she did not have transportation to get to the courthouse that day.  The mother argued in her motion that the Court should "reopen or reconsider" its order in the interest of justice because she had evidence that her student loans were largely incurred during the marriage, that the debt to the father's father was incurred after the separation and that the father, and not she, was at fault in the divorce.

On October 27, 2010, the Trial Court entered an order that clarified custody arrangements and provided procedures the parties were required to follow regarding the mother's supervised visitation at Child & Family Tennessee.

On November 9, 2010, the Trial Court entered an order denying the mother's motion for reconsideration of the August 20, 2010 judgment,  finding the mother's failure to attend the last day of trial was "inexcusable".  The mother's motion to modify the parenting order to provide for telephone communication was reserved to allow the mother to present evidence from a therapist if she chose.

The mother filed a Notice of Appeal on November 4, 2010.[2]

The father's counsel filed a motion to withdraw as counsel on November 19, 2010, which was granted, and the father represented himself on appeal.  The mother then filed an

---

[2]Tenn. R. App. P. 4 (d) provides that a prematurely filed notice of appeal shall be treated as filed after the entry of the judgment from which the appeal is taken and on the day thereof.

affidavit of indigency and the Court found that she was not indigent. On December 8, 2010, the father also filed an affidavit of indigency based on the fact that he had a debt of $146,000.00. The Court found he was indigent and that he was not receiving child support from the mother. Significantly, the Court found the Father was in "jeopardy of incarceration" (because of the motion for contempt) and should have the assistance of counsel. Counsel was appointed on December 8, 2010 based on the fact the father was in "jeopardy of incarceration".

Apparently, the issues raised in the motion for contempt were mediated pursuant to an order of the Trial Court on January 14, 2011 and the parties entered into a written "mediated agreement" regarding the mother's co-parenting at Child & Family and the parties' obligations regarding cancellation of the meetings. The agreement bears the signature of both the mother and the father. On January 25, 2011, the mother's sometime counsel, Elliott Schuchardt, reentered the case, and filed a "motion to vacate the settlement on grounds of duress and lack of counsel". As the subject of the mediation was the modification of the custody and co-parenting order of the Trial Court, enforcement of the mediated agreement between the parties was stayed by this Court by an order dated June 14, 2011. This Court, therein stayed all post-dissolution proceedings in the Trial Court that sought to modify the judgment on appeal, as opposed to enforce the judgment, based on the reasoning set forth in *Dhillon v. Dhillon*, No. M2009-02018-COA-R3-CV, 2010 WL 3025193 (Tenn. Ct. App. Aug. 2, 2010).

On January 12, 2011, once again, the mother's attorney filed a motion to withdraw as counsel in the Trial Court based on a "conflict of interest" that made it "impossible" for him to represent the mother in "this Court..." However, counsel filed an appellate brief on behalf of the mother in this Court on April 20, 2011 and he presented oral argument on behalf of the mother at the hearing of the appeal in this Court on November 8, 2011.

Appellant has raised twenty issues on appeal, and has divided the issues into sub-categories as follows, which we quote:

A.     Ethical Issues

      1.     Whether the Trial Court should have considered Mother's motion to recuse Judge Swann before addressing the merits of the case?

      2.     Whether the Trial Court and Father engaged in *ex parte* communication and if so, did such communication create an appearance of impropriety?

      3.     Whether the Trial Court created an appearance of impropriety by not

hearing Mother's motion to establish telephone communication with the children?

B.     Representation Issues

4.     Whether the Trial Court violated Supreme Court Rule 29 when it appointed state-paid counsel for Father, but denied indigency status to Mother?

5.     Whether the Trial Court erred when it entered an order prohibiting attorney Elliot Schuchardt from representing Mother?

6.     Whether the Trial Court violated Supreme Court Rule 31 by ordering Mother to attend a mediation session without the assistance of counsel?

C.     Discovery Issues

7.     Whether the Trial Court erred when it denied Mother's motion for an order requiring Father to produce his tax returns?

8.     Whether the Trial Court erred when it denied Mother's motion for an order requiring Father to produce his American Express credit card statements.

D.     Support Issues

9.     Whether the Trial Court erred when it denied Mother's motion that would require Father to pay the first mortgage on the marital home?

10.     Whether the Trial Court erred when it denied Mother's motion for alimony pendente lite?

E.     Custody Issues

11.     Whether the Trial Court erred when it did not rule on Mother's motion regarding the return of the children's clothes?

12.     Whether the Trial Court erred when it awarded primary custody of the children to Father?

13. Whether the Trial Court erred when it limited Mother's visitation with the children to supervised visitation?

14. Whether the Trial Court erred when it prohibited Mother from speaking with the children on the telephone?

15. Whether the Trial Court erred when it prohibited Mother from participating in making medical decisions for the children?

16. Whether the Trial Court erred when it refused to establish telephone contact with the children?

F. Equitable Distribution Issues

17. Whether the Trial Court erred when held the equitable distribution trial despite Mother's inability to attend?

18. Whether the Trial Court erred when it denied Mother's motion for reconsideration of the equitable distribution order?

19. Whether the Trial Court erred when it denied Mother's request for alimony?

20. Whether the Trial Court erred when it excluded Mother's exhibits from the appellate record?

We review a trial court's findings of fact in a divorce case *de novo* with the presumption that the trial court's factual determinations are correct unless the evidence preponderates against such factual determinations. *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn.1999).

This Court reviews credibility determinations made by the trial court with great deference. *Keaton v. Hancock County Bd. of Educ.,* 119 S.W.3d 218, 223 (Tenn. Ct. App. 2003). The trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005).

The first issue is whether the Trial Court should have considered the mother's motion to recuse Judge Swan before addressing the merits of the case.

The mother filed her notice of appeal on November 4, 2010. She claims that she filed

a motion to recuse Judge Swann on February 8, 2011. The motion is not part of the appellate record nor can it be an appealable issue here as it was filed after the notice of appeal was filed. Accordingly, this Court will not consider the issue.

The next issue is whether the Trial Court and the father engaged in *ex parte* communication.

The alleged *ex parte* communication between the Judge and the father took place on February 16, 2011, months after appellant filed her notice of appeal. Accordingly, this issue is not properly before this Court and will not be considered.

The next issue charges the Trial Court created an appearance of impropriety by not hearing the mother's motion to establish telephone communication with the children.

Appellant has appealed the Trial Court's failure to hold a hearing on her motion to establish telephone contact between herself and her children. She provides no reference to where in the record the motion can be found or the date it was filed. We have determined that this motion is not part of the appellate record, and we can only assume that the motion, if there was one, was filed after the notice of appeal was filed.

Moreover, the Court's judgment of April 14, 2009, specifically provided that the mother's communication between the mother and the children was limited to supervised visitation and written letters delivered by U. S. Mail. That order was not modified by the Trial Court before the mother filed her notice of appeal. Generally, under Rule 4 of the Tennessee Rules of Appellate Procedure, the jurisdiction of the appellate court attaches with the filing of a notice of appeal and, once an appeal has been filed, "the trial court effectively loses its authority to act in the case without leave of the appellate court." *Holladay v. Speed,* 208 S.W.3d 408, 414 (Tenn. Ct. App. 2005)(citing *First Am. Trust Co. v. Franklin–Murray Dev. Co.,* 59 S.W.3d 135, 141 (Tenn. Ct. App.2001).

In *Dhillon v. Dhillon*, M200902018COAR3CV, 2010 WL 3025193 at * 5 - 6 (Tenn. Ct. App. Aug. 2, 2010) this Court held that a trial court is without jurisdiction to consider a post-dissolution petition for modification of the divorce judgment where the matters raised in the modification petition were at issue on appeal. Following the holding in the *Dhillon* case this Court entered an order on June 14, 2011, staying "all post-dissolution proceedings in the trial court that seek to modify the judgment on appeal, as opposed to enforce it" pending the conclusion of the appellate proceeding. Accordingly, any attempt the mother makes to modify the Judgement of the Trial Court, including a motion to establish telephone contact with the children, is not proper before the Court, and the Trial Court was without authority to act on the mother's motion.

Next, the mother argues the Trial Court violated Supreme Court Rule 29 when it appointed state-paid counsel for the father, but denied indigency status to the mother?

The appellant's argument on this issue is without merit. Moreover, the issue is not properly before this Court. The filing of the motion for contempt and the affidavit of indigency, as well as the Trial Court's order appointing counsel, all occurred after the filing of appellant's notice of appeal.

Next, the appellant complains about an order entered by the Trial Court prohibiting appellant's attorney from representing the mother?

The record does not contain an order by the Trial Court prohibiting Elliot Schuchardt from representing the mother. This Court's authority to review a trial court's decision is limited to those issues for which an adequate legal record has been preserved. *Taylor v. Allstate Ins. Co.*, 158 S.W.3d 929, 931 (Tenn. Ct. App. 2004)(citing *Trusty v. Robinson,* No. M2000–01590–COA–R3–CV, 2001 WL 96043, at *1 (Tenn. Ct. App. Feb.6, 2001)). This issue will not be considered by this Court.

The next issue argues the Trial Court violated Supreme Court Rule 31 by ordering the mother to attend a mediation session without the assistance of counsel.

On December 8, 2010, the Trial Court ordered mediation of the issues raised by the mother in her motion for contempt. The motion was filed on December 6, 2010 and the mediation occurred on January 14, 2011. The issue raised by the mother is not before this Court, as the order of mediation, as well as the motion to compel and the mediation itself all occurred after appellant filed her notice of appeal.

The next two issues concern the discovery of documents. Appellant contends the Trial Court erred when it denied her motion for an order requiring the father to produce his tax returns and American Express credit card statements. We note that by the order entered on June 12, 2010 the Trial Court ordered the father to respond to the written discovery propounded by the mother, by June 25, 2010. The written order memorializes an oral order provided by the Trial Court on June 11, 2010 at a trial management conference. A hearing was held on July 23, 2010, wherein the Trial Court stated that the parties had reached an agreement regarding the father's actions on the days of the mother's supervised visitation with the children. The mother and her counsel were present at that hearing, and there is no indication in the transcript of the hearing that the motion for discovery sanctions was raised by the mother. The trial on the equitable distribution issue was continued from July 23, 2010 to August 10, 2010, which was the next available trial date for the Court. The Trial Court also indicated that the mother's counsel, Elliot Schuchardt was withdrawing from

representing the mother and that he would not be present at the August 10, 2010 trial. An abbreviated transcript of the August 10, 2010 trial and the Trial Court's subsequent Order shows the mother did not attend the trial, nor was she represented at trial.

This Court will remand the equitable distribution of the marital estate issue for a new trial, and the mother will have an opportunity to receive the requested information prior to trial, as we will explain.

The mother claims the Trial Court erred when it "refused" to require the father to pay the first mortgage on the marital home. The record reflects that on April 7, 2008 the mother filed a motion for contempt based on this allegation, and that a trial management order of April 21, 2008 reflects that the mother's motion was disposed of by the parties' agreement to sell the marital residence. Based on the subsequent orders of April 21 and June 18, 2008, the Trial Court did not "refuse" to order that the father pay the mortgage payments to preclude foreclose. Rather, the parties agreed to put the house on the market to avoid foreclosure. The mother and father agreed to attempt to avoid foreclosure by selling the house.

The mother next raises the issue of the Court's denial of her motion for alimony pendente lite?

The mother filed her first petition for alimony *pendente lite* on December 12, 2008, and asked for alimony only until February 3, 2009 when the trial on the divorce petition was to be held. The trial was continued and was held on March 16 and 17, 2009. Only the issues of child custody and support were determined at the March trial pursuant to *Anderton* 988 S.W.2d 675. All other issues were reserved.

On March 12, 2010, the mother filed another motion for temporary alimony, *pro se.* The Trial Court, acting on the motion, found the Mother was unemployed and had not taken "any employment other than some small amount of contract work." The Court concluded that "this is not a case for *pendent lite* support." The Court further ordered the father to provide documentation of his income to the mother's counsel. There is no transcript of the April 21, 2010 hearing, and it is well settled that this Court's authority to review a trial court's decision is limited to those issues for which an adequate legal record has been preserved. *Taylor v. Allstate Ins. Co.*, 158 S.W.3d 929, 931 (Tenn. Ct. App. 2004)(citing *Trusty v. Robinson,* No. M2000–01590–COA–R3–CV, 2001 WL 96043 at *1 (Tenn. Ct. App. Feb.6, 2001)). On this record we must assume the sufficiency of the evidence to support the judgment of the Trial Court. *Houston v. Mounger,* No. E2002–00779–COA–R3–CV, 2003 WL 22415363 at *2 (Tenn. Ct. App. Oct. 23, 2003); *Sherrod v. Sherrod,* 849 S.W.2d 780, 784 (Tenn. Ct. App. 1992).

Next, the mother argues the Trial Court erred when it did not rule on the mother's motion regarding the return of the children's clothes.

The Trial Court considered the motion, among others, on June 18, 2008, and noted in its Memorandum Opinion that it would address the issues raised in the motions for contempt "down the road" as a hearing on the issues would take a lot more time than was available on a motion day. The Trial Court on July 15, 2008 specifically stated that the issues raised in the motions for contempt, including the issue of the return of clothing, would be entertained at trial, which was set for July 15, 2008. That date was continued to February 3, 2009 and then to March 16, 2009.

There is no evidence in the record that the mother objected to the Trial Court leaving the clothing issue open until the trial, nor does the record reflect the mother tried to reset the hearing prior to the trial date. At the March 16, 2009 trial, evidence was heard regarding the mother's allegations that the father did not return the children's clothing to her. The father stated that he took great care to make sure that all of the clothing was returned to the mother. The Trial Court believed the father and did not believe the mother.

Our review of the testimony of the mother and father on this issue supports the Trial Court's findings, and this issue is without merit.

Next, the mother argues the Trial Court erred in awarding primary custody of the children to the father?

The Trial Court's memorandum opinion issued following the March 2009 custody trial and the subsequent written judgment makes clear that the Trial Court found the father far more credible than the mother on all issues. We will not re-evaluate a trial court's assessment of a witness's credibility absent clear and convincing evidence to the contrary. *Hopper*, 2005 WL 2077650 at *7. The Trial Court's designation of the father as the sole residential parent and the conditions for visitation is well supported by the record. This issue is without merit.

The mother appeals the Trial Court's order that her co-parenting be restricted to supervised visitation at the Parent Place.

The Trial Court clearly believed the mother's behavior had caused emotional harm to the children, especially Alexis. We hold that the evidence does not preponderate against the Trial Court's conclusion. There was evidence that the mother had received two DUIs and had caused two car accidents since the July 2007 marital separation. There was also ample

-14-

evidence of the mother's emotional/mental instability, which also put the children at emotional risk. Based on the evidence presented, we affirm the Trial Court on this issue.

Next, the mother charges the Trial Court violated Tenn. Code Ann. § 36-6-101(a)(3) when it forbade the mother from having telephone contact with the children. Here the Trial Court found that it was not in the best interests of the children to have unattended telephone conversations with the mother, based on the mother's history. The evidence does not preponderate against the Trial Court's findings. We hold that the order prohibiting telephone conversations between the mother and the children to be in the best interest of the children at that time. Tenn. Code Ann. § 36-6-101(a)(3) provides "Except when the court finds it not to be in the best interests of the affected child", and the Trial Court's order falls within the exception to this statutory mandate.

Next the mother appeals the Trial Court's order prohibiting the mother from participating in making medical decisions for the children. The Trial Court found that the mother was constantly taking the children to physicians and therapists for evaluation and treatment of imaginary medical problems, and the Trial Court noted that the children were healthy and did not need non-stop medical evaluations, and that the mother's practice subjected them to unneeded medical attention, was costly and was emotionally abusive to the children. In view of these findings, the Trial Court named the father as the sole medical custodian of the children. The record supports the findings of fact made by the Trial Court on this issue and the issue is without merit.

The next issue to consider is whether the Trial Court erred when it held the equitable distribution trial despite the mother's inability to attend?

As we have noted, the abbreviated transcript of the trial shows that the Trial Court was informed of the mother's telephone conversation with the clerk's office that she did not have transportation for the trial, and the Court responded by saying "I advised the clerk that those matters would be dealt with formally in court, that could not be dealt with informally by telephone calls with the clerk's office." This is the next day of contested trial. One does not effect continuances by telephone calls to the clerk's office."

Tenn. Code Ann. § 20-7-101 *et seq.* governs continuances. The Code provides that "continuances may always be granted by the court, upon good cause shown, in any stage of the action. § 20-7-102 provides that "[a]ny cause may be continued by mutual consent of the parties when approved by the court, or on sufficient cause shown by affidavit." The local rules for the trial court provide that "[c]ontinuances of the case-in-chief may be obtained only from the Court, for good cause shown, and upon approval and entry of an appropriate order prepared by counsel." Tenn. R. 6 Dist. Cir. Ct., Div. 4 Rule 6. The record does not show

that the mother asked that the trial be continued on August 10, 2010 nor is there any evidence that counsel for the father would have consented to a continuance had the mother requested one. Further, the proper method of requesting a continuance, under Tenn. Code Ann. § 20-7-102 is by presenting the trial court with an affidavit that sets forth "good cause" for the continuance. No affidavit was presented in this case, nor was the statute otherwise followed.

On September 10, 2010, the mother filed a motion asking the Trial Court to reconsider its judgment of August 20, 2010 under Tenn. R. Civ. P. 59 and 60. The motion in fact, was a motion for a new trial, which the Trial Court denied. On appeal, the mother argues that she should have a new trial on the equitable distribution issue, but does not appeal the Trial Court's entry and order granting the divorce. She relies on Tenn. R. Civ. P. 60.02 which allows relief from judgment from "mistake, inadvertence, surprise or excusable neglect . . .."

The mother contends that her inability to attend the trial on August 10, 2010 because her transportation arrangements fell through falls within the category of excusable neglect. She explains that in August 2010, she no longer had a vehicle, was unemployed and her unemployment benefits had been exhausted, and that she was totally dependent on family and friends for transportation in the Knoxville area. She claims that she had made arrangements with a friend, Jack Snow, to take her to court on the trial date. However, on the morning of the trial Snow told her that he had to work and could not provide her transportation. She then called the Court and advised the Judge's secretary that she could not attend because of lack of transportation. She asks this Court to reverse the Trial Court's denial of her motion for a new trial based on these circumstances which she contends are "excusable neglect."

The Supreme Court, in *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003), set forth the standard for review of a trial court's denial of a Rule 60.02 motion:

> In reviewing a trial court's decision to grant or deny relief pursuant to Rule 60.02, we give great deference to the trial court. *See Underwood v. Zurich Ins. Co.,* 854 S.W.2d 94, 97 (Tenn.1993). Consequently, we will not set aside the trial court's ruling unless the trial court has abused its discretion. *See id.* An abuse of discretion is found only when a trial court has " 'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.' " *State v. Stevens,* 78 S.W.3d 817, 832 (Tenn.2002) (*quoting State v. Shuck,* 953 S.W.2d 662, 669 (Tenn.1997)). The abuse of discretion standard does not permit an appellate court to merely substitute its judgment for that of the trial court. *See Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn.2001).

The burden of showing "excusable neglect is on the moving party. *Ferguson v. Brown*, 291 S.W.3d 381, 388 (Tenn. Ct. App. 2008)(citing *Tennessee Dep't of Human Servs.*

*v. Barbee,* 689 S.W.2d 863, 866 (Tenn.1985)). This Court in *Ferguson* discussed the meaning of the term "excusable neglect" as follows:

> Excusable neglect may have causes ranging from forces beyond a party's control to forces within its control. *State ex rel. Sizemore v. United Physicians Ins. Risk Retention Group*, 56 S.W.3d 557, 567 (Tenn. Ct. App. 2001). "It may encompass simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id. (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 388, 113 S. Ct. 1489, 123 L. Ed.2d 74 (1993)). . . . Whether neglect is excusable is an equitable determination "taking account of all relevant circumstances surrounding the party's omission." *Sizemore* at 567 (quoting *Pioneer Inv. Servs. Co.,* 507 U.S. at 395, 113 S. Ct. 1489; *Dubuc v. Green Oak Township,* 958 F. Supp. 1231, 1241 (E. D. Mich.1997)).

*Ferguson* at 388.

We conclude the circumstances stated by the mother qualify as excusable neglect. The mother contends that the equitable distribution issues would have been resolved differently if she had been able to provide her evidence regarding the debts that were divided between the parties and that she was prejudiced by the Trial Court's denial of her motion for a new trial. We conclude that the Trial Court abused its discretion when it did not grant her motion for a new trial to permit her to introduce evidence regarding the debts at issue. Accordingly, we reverse the Trial Court's judgment on the trial, and remand for a new trial on the issue of equitable distribution of the parties' assets and liabilities.

The next issue raises the denial of the request for alimony. The Court stated in the Final Judgment that the request for alimony was not well taken as "the relative fault in this matter strongly favors Plaintiff and the Court finds that the mother wreaked economic havoc on the marital estate. He observed: she is educated, having one Master's Degree and being only a few hours short of a second Master's degree. She requires no rehabilitation and there is no merit to the suggestion that she should be entitled to further financial underpinning from her father." This Court will not alter the Trial Court's decision on alimony in the absence of abuse of discretion. *Lindsey v. Lindsey,* 976 S.W.2d 175, 180 (Tenn. Ct. App.1997).

This marriage was of short duration, and there is no evidence that either party has a physical disability or is incapacitated due to chronic illness. The mother does not have custody of the children, and there is no impediment to her being available for work. There is no evidence on the mother's financial need at the time of the August trial, nor was there evidence of the father's ability or inability to pay alimony. We affirm the Trial Court on this

issue.

The mother's last issue complains about the Trial Court excluding the mother's exhibits from the appellate record.  This issue is moot.   The mother will have the opportunity to proffer these exhibits at the trial on remand.

The Trial Court's rulings on equitable distribution of the marital assets and debts are vacated and the case remanded for trial.  All other decisions of the Trial Court are affirmed.

The cost of the appeal is assessed one-half to Amy Dendy and one-half to James Dendy.

_____
HERSCHEL PICKENS FRANKS, P.J.